STATE OF NORTH CAROLINA v. SHANNON DEWAYNE WILLIAMS

No. COA01-496

(Filed 4 June 2002)

**1. Assault— inflicting serious bodily injury—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of assault inflicting serious bodily injury even though defendant contends there was insufficient evidence the victim suffered serious bodily injury as found under part of N.C.G.S. § 14-32.4 and the jury instructions defined serious bodily injury as an injury that creates or causes a permanent or protracted condition that causes extreme pain, because: (1) the

STATE v. WILLIAMS

[150 N.C. App. 497 (2002)]

evidence tends to show the victim suffered a broken jaw which was wired shut for two months, and during those two months the victim lost thirty pounds; (2) the victim testified that the injury to his jaw resulted in $6,000 worth of damage to his teeth, that his ribs were broken, that he suffered back spasms on two occasions that made it so difficult for him to breathe that he had to visit the emergency room, and that his back spasms had continued up until the day he testified at trial; and (3) a doctor testified that the type of injury suffered by the victim, the broken jaw, would cause a person quite a bit of pain and discomfort.

**2. Evidence— limitation on cross-examination—prior convictions for shoplifting**

Assuming arguendo that the trial court erred in an assault inflicting serious bodily injury case by failing to allow defense counsel to further cross-examine one of the State's witnesses with respect to her prior convictions for shoplifting, defendant has failed to show prejudicial error because: (1) defendant has failed to meet his burden of showing that there is a reasonable possibility that a different result would have been reached absent the alleged error; and (2) contrary to defendant's contention that this witness was the only one who testified that defendant actually delivered blows to the victim, two other witnesses testified that defendant joined a coparticipant in the actual beating and kicking of the victim.

**3. Burglary and Unlawful Breaking or Entering— misdemeanor breaking or entering—first-degree trespass**

The trial court erred by sentencing a defendant for both first-degree trespass and misdemeanor breaking or entering, and defendant's conviction for first-degree trespass must be vacated and his conviction for resisting a public officer that was consolidated with his conviction for first-degree trespass must be remanded for resentencing, because: (1) first-degree trespass is a lesser included offense of misdemeanor breaking or entering; and (2) whether defendant's conviction of resisting a public officer warrants the sentence imposed in connection with the two consolidated crimes is a matter for the trial court to reconsider.

Appeal by defendant from judgments entered 24 October 2000 by Judge Loto G. Caviness in Haywood County Superior Court. Heard in the Court of Appeals 14 February 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Robert R. Gelblum, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

CAMPBELL, Judge.

Defendant was indicted for assault inflicting serious bodily injury in violation of N.C. Gen. Stat. § 14-32.4, felonious breaking or entering, first degree trespass, and resisting a public officer. Defendant was tried at the 23 October 2000 Criminal Session of Haywood County Superior Court. Defendant was found guilty of assault inflicting serious bodily injury, misdemeanor breaking or entering, first degree trespass, and resisting a public officer. Defendant was sentenced to a minimum prison term of 25 months with a maximum term of 30 months for the assault inflicting serious bodily injury conviction. Defendant was sentenced to a consecutive term of 120 days for the misdemeanor breaking or entering conviction. Defendant's convictions for first degree trespass and resisting a public officer were consolidated for judgment, and defendant was sentenced to an additional consecutive term of 60 days. Defendant appeals. For the reasons stated herein, we hold no error as to defendant's convictions for assault inflicting serious bodily injury and misdemeanor breaking or entering; however, we vacate defendant's first degree trespass conviction and remand defendant's resisting a public officer conviction for a new sentencing hearing.

The State's evidence tended to show that around midnight on the evening of 16 February 2000, Ronald Barton Moore ("Moore") was asleep in his home when he was awakened by Amber, his teenage daughter, and Rose Marie Chapman ("Chapman"). Chapman is the mother of one of Amber's friends, and Amber was staying at Chapman's apartment that night. Chapman came to Moore's house to seek his help in making several young men leave her apartment. Moore rode with Chapman to her apartment, and upon entering the apartment, found defendant and four or five other young men in the apartment drinking liquor. At the request of Chapman, Moore asked the men to leave the apartment, to which the men responded that it was not Moore's house and he had no right to ask them to leave. When the men refused to leave, Chapman told Moore that it would probably be better if Moore and Amber left, and that she would probably call the police. As Moore and Amber were walking to the vehicle of a neighbor who was to take them home, defendant and one

of the other men, Jason Caldwell ("Caldwell"), attacked Moore. Caldwell punched Moore in the face, knocking him to the ground, and Caldwell and defendant began kicking Moore. The two men stopped after a few minutes and Moore was helped onto the porch, whereupon defendant punched Moore in the eye and kicked him three or four more times before Moore passed out.

As a result of the attack by defendant and Caldwell, Moore suffered a broken jaw which had to be wired shut for two months. During those two months, Moore lost thirty pounds. Moore also testified that his ribs were broken and that he had been forced to go to the emergency room on two occasions since the attack due to back spasms that made it difficult for him to breathe. Moore testified that he was still suffering from back spasms at the time of the trial. In addition, Moore testified that he suffered from blurred vision after the attack, and that he had $6,000.00 in damage to his teeth.

Dr. Tannehill's testimony confirmed that Moore's jaw had been broken and that Dr. Tannehill had performed the surgery in which Moore's jaw was wired shut. Dr. Tannehill further testified that a broken jaw is the type of injury that causes "quite a bit" of pain and discomfort that "gradually subsides over a period of time, in varying degrees to the type of [] injury." Dr. Tannehill testified that Moore had bruised, not broken, ribs.

Darrell Burnette ("Burnette"), a neighbor of Chapman, testified that he was awakened in the early morning hours of 17 February 2000 by defendant and Caldwell knocking on his back door. When Burnette opened the door to see what the two men wanted, they asked to use the telephone. Burnette noticed that the two men were "badly intoxicated," told them that his telephone did not work, shut the door, and started back to bed. Defendant and Caldwell knocked on the door a second time, and when Burnette again opened it, the two men asked for a "light." Burnette told them that he did not have a "light," and that they should go about their business. Burnette again shut the door, turned out the light, and started back to bed, whereupon he heard a window next to the back door break. At that point, Burnette picked up a mattock handle, opened the back door again, and began arguing with defendant and Caldwell. As Burnette and the two men were arguing, Officer Tamara Vandermolan, who had been summoned to the scene as a result of Burnette's wife's call to 911, arrived at the house. As Officer Vandermolan was preparing to handcuff the two men, they ran off,

**STATE v. WILLIAMS**

[150 N.C. App. 497 (2002)]

with Officer Vandermolan pursuing one and Burnette pursuing the other.

At the outset, we note that defendant sets forth twenty-three assignments of error, but fails to address many of them in his brief. Those assignments of error not presented or discussed in defendant's brief are deemed abandoned pursuant to Rule 28(a) of the North Carolina Rules of Appellate Procedure.

[1] Defendant first contends that the trial court erred in denying his motion to dismiss the felony assault charge, arguing that the evidence was insufficient to show that the victim, Moore, suffered "serious bodily injury," as defined in N.C.G.S. § 14-32.4.

In ruling on a motion to dismiss on the ground of insufficiency of the evidence, the trial court must determine "whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). "Substantial evidence is that which a reasonable juror would consider sufficient to support a conclusion that each essential element of the crime exists." *State v. Baldwin*, 141 N.C. App. 596, 604, 540 S.E.2d 815, 821 (2000). "[I]t is well settled that the evidence is to be considered in the light most favorable to the State and that the State is entitled to every reasonable inference to be drawn therefrom." *State v. Alexander*, 337 N.C. 182, 187, 446 S.E.2d 83, 86 (1994).

Defendant was charged and convicted of assault inflicting serious bodily injury, which "requires proof of two elements: (1) the commission of an assault on another, which (2) inflicts serious bodily injury." *State v. Hannah*, 149 N.C. App. 713, —— S.E.2d —— (COA 00-1377, filed 16 April 2002) (citing *State v. Wampler*, 145 N.C. App. 127, 549 S.E.2d 563 (2001)); N.C. Gen. Stat. § 14-32.4 (1999). While it is clear that there is substantial evidence of the first element of this offense, defendant argues that there was insufficient evidence that he inflicted "serious bodily injury" on Moore. We disagree.

In 1996, the General Assembly created the offense of assault inflicting "serious bodily injury" by enacting N.C.G.S. § 14-32.4, which reads:

Unless the conduct is covered under some other provision of law providing greater punishment, any person who assaults another person and inflicts serious bodily injury is guilty of a Class F felony. "Serious bodily injury" is defined as bodily injury

that creates a substantial risk of death, or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization.

N.C.G.S. § 14-32.4 (1999).

Prior to passage of N.C.G.S. § 14-32.4, the primary statutes dealing with assaults in this jurisdiction were N.C.G.S. §§ 14-32 and 14-33. N.C.G.S. § 14-33 makes an assault that inflicts "serious injury" a Class A1 misdemeanor. N.C.G.S. § 14-32 makes an assault with a deadly weapon that inflicts "serious injury" a Class E felony, and makes an assault with a deadly weapon with intent to kill that inflicts "serious injury" a Class C felony. In the past, the courts of this State have declined to define "serious injury" for purposes of assault prosecutions other than stating that the term "serious injury" means physical or bodily injury resulting from an assault, *Alexander*, 337 N.C. at 188, 446 S.E.2d at 87, and that "[f]urther definition seems neither wise nor desirable." *State v. Jones*, 258 N.C. 89, 91, 128 S.E.2d 1, 3 (1962). In *State v. Hedgepeth*, 330 N.C. 38, 409 S.E.2d 309 (1991), the Supreme Court explained:

> Whether a serious injury has been inflicted depends upon the facts of each case and is generally for the jury to decide under appropriate instructions. A jury may consider such pertinent factors as hospitalization, pain, loss of blood, and time lost at work in determining whether an injury is serious. Evidence that the victim was hospitalized, however, is not necessary for proof of serious injury.

*Id.* at 53, 409 S.E.2d at 318 (internal citations omitted). In sum, the case law addressing the issue of the sufficiency of evidence of serious injury in an assault prosecution stands for the proposition "that as long as the State presents evidence that the victim sustained a physical injury as a result of an assault by the defendant, it is for the jury to determine whether the injury was serious." *Alexander*, 337 N.C. at 189, 446 S.E.2d at 87.

Subsequent to the definition of "serious injury" becoming well settled in case law, the General Assembly enacted N.C.G.S. § 14-32.4, which makes an assault inflicting "serious bodily injury" a Class F felony, "[u]nless the conduct is covered under some other provision of law providing greater punishment." N.C.G.S. § 14-32.4. The

General Assembly also expressly defined what it meant by the term "serious bodily injury." In so doing, we conclude that the General Assembly intended for N.C.G.S. § 14-32.4 to cover those assaults that are especially violent and result in the infliction of extremely serious injuries, and are not covered by some other provision of law providing for greater punishment. Thus, this Court has concluded that "serious bodily injury," as set forth in N.C.G.S. § 14-32.4, requires proof of more severe injury than the "serious injury" element of other assault offenses. *Hannah*, 149 N.C. App. at 717, —— S.E.2d at ——.

In determining whether the trial court in the instant case erred in denying defendant's motion to dismiss, we must determine whether the record contains substantial evidence that Moore suffered "serious bodily injury" as defined by N.C.G.S. § 14-32.4. However, in making this determination, we do not consider the entire definition set forth in N.C.G.S. § 14-32.4; rather we are limited to that part of the definition set forth in the trial court's instructions to the jury. In instructing the jury, the trial court defined "serious bodily injury" as "an injury that creates or causes a permanent or protracted condition that causes extreme pain." It is well settled that a defendant may not be convicted of an offense on a theory of guilt different from that presented to the jury. *State v. Helton*, 79 N.C. App. 566, 568, 339 S.E.2d 814, 816 (1986). Had the trial court instructed the jury on the complete definition of "serious bodily injury" set out in N.C.G.S. § 14-32.4, defendant's conviction could be sustained on any one of the discrete portions of the definition. However, since the trial court limited its instruction in the way it did, we must determine whether the record contains substantial evidence that Moore suffered from "a permanent or protracted condition that causes extreme pain."

Viewing the evidence in the light most favorable to the State, we hold that there was sufficient evidence that the victim suffered a "serious bodily injury" consistent with the instruction given to the jury. The evidence tends to show that Moore suffered a broken jaw which was wired shut for two months. During those two months, Moore lost thirty pounds. Moore testified that the injury to his jaw resulted in $6,000.00 worth of damage to his teeth. Moore also testified that his ribs were broken and that he suffered back spasms on two occasions that made it so difficult for him to breathe that he had to visit the emergency room. Finally, Moore testified that his back spasms had continued up until the day he testified at trial. Dr. Tannehill testified that the type of injury suffered by Moore, the broken jaw, would cause a person "quite a bit" of pain and discom-

fort. We conclude that a reasonable juror could find this evidence sufficient to conclude that Moore's injuries created a "protracted condition that cause[d] extreme pain." Thus, the trial court did not err in denying defendant's motion to dismiss, and defendant's first assignment of error is overruled.

**[2]** Defendant next contends that the trial court erred in not allowing defense counsel to cross-examine one of the State's witnesses, Rose Marie Chapman, with respect to her prior convictions for shoplifting.

It is the well-settled rule in North Carolina that for the purposes of impeachment, a witness may be cross-examined with respect to prior convictions of a felony, or of a Class A1, Class 1, or Class 2 misdemeanor. N.C. Gen. Stat. § 8C-1, Rule 609(a) (1999); *State v. Finch*, 293 N.C. 132, 141, 235 S.E.2d 819, 824 (1977); *State v. Gallagher*, 101 N.C. App. 208, 211, 398 S.E.2d 491, 493 (1990). In the instant case, the following exchange occurred during cross-examination of Chapman by defense counsel:

Q  What, if any, crimes have you been convicted of in the last 10 tens [sic] [years] that carries [sic] a sentence of 60 days or more?

A  I've been caught for shoplifting twice.

Q  When was that?

A  Ummm, let's see, back in '98 and then it was in '99.

Q  Were you found guilty of those two charges?

MR. JONES:  Your Honor, I would object. Those aren't charges that carries [sic] more than 60 days anyway.

THE COURT:  Sustained at this point.

At that point, defense counsel moved on to another line of questioning. On appeal, defendant contends that the trial court erred in sustaining the State's objection because a second offense of shoplifting is a Class 2 misdemeanor, and, therefore, a proper subject of impeachment under Rule 609(a).

Assuming, *arguendo*, that the trial court erred in not allowing defense counsel to question the witness further concerning her possible prior convictions, we conclude that defendant has failed to meet his burden of showing that there is a reasonable possibility that, had the alleged error in question not been committed, a different result

would have been reached at trial. N.C. Gen. Stat. § 15A-1443 (1999). Thus, defendant has failed to show prejudicial error.

While defendant maintains that Rose Marie Chapman was the State's most damaging witness, and the only reliable witness who testified that defendant was involved in the actual beating and kicking of Moore, the record reveals otherwise. In addition to the victim's testimony that defendant hit him in the eye and kicked him three or four times, Amber Moore and Chris Reagan both testified that defendant joined Jason Caldwell in the actual beating and kicking of the victim. Thus, we disagree with defendant's contention that Rose Marie Chapman was the only witness who testified that defendant actually delivered blows to the victim, and we find no prejudicial error.

[3] Defendant next contends that the trial court erred in entering judgment against him for both first degree trespass and misdemeanor breaking or entering. The State concedes that first degree trespass is a lesser included offense of misdemeanor breaking or entering, *see* N.C. Gen. Stat. § 14-159.14 (1999), and, therefore, that defendant is correct that his conviction for first degree trespass must be vacated and judgment thereon arrested.

However, the State argues that since defendant's conviction for first degree trespass was consolidated for judgment with his conviction for resisting a public officer, both of which are classified as Class 2 misdemeanors, resentencing is not required for defendant. The record shows that the trial court consolidated both crimes for judgment and sentenced defendant to 60 days, within the range for a Class 2 misdemeanor committed by someone at defendant's prior record level. N.C. Gen. Stat. § 15A-1340.23(c) (1999). The State contends that since defendant's conviction for resisting a public officer remains undisturbed, resentencing is not necessary. We disagree.

In *State v. Brown*, 350 N.C. 193, 513 S.E.2d 57 (1999), the defendant received a consolidated sentence of thirty years for her conviction of solicitation to commit murder and conspiracy to commit murder. On appeal, the Supreme Court vacated the conviction of solicitation to commit murder. The Court held that judgment on the conspiracy to commit murder conviction must be remanded to the trial court for resentencing because "we cannot assume that the trial court's consideration of two offenses, as opposed to one, had no affect [sic] on the sentence imposed." *Id.* at 213, 513 S.E.2d at 70.

**SHEEHAN v. PERRY M. ALEXANDER CONSTR. CO.**

[150 N.C. App. 506 (2002)]

In the instant case, defendant's conviction of resisting a public officer would support a sentence of 60 days. However, whether that crime warrants the sentence imposed in connection with the two consolidated crimes is a matter for the trial court to reconsider. *See State v. Parker*, 143 N.C. App. 680, 550 S.E.2d 174 (2001). Thus, defendant's conviction of resisting a public officer must be remanded for a new sentencing hearing.

Having ruled in defendant's favor on this assignment of error, we need not consider defendant's remaining assignments of error pertaining to his first degree trespass conviction.

Accordingly, we hold that defendant received a fair trial free from prejudicial error on assault inflicting serious bodily injury and misdemeanor breaking or entering, that defendant's conviction for first degree trespass is hereby vacated and judgment thereon arrested, and that the judgment on the resisting a public officer conviction is hereby remanded for resentencing.

No. OO CRS 3039: Assault inflicting serious bodily injury: No error.

No. OO CRS 3901: Misdemeanor breaking or entering: No error;
First degree trespass: Conviction vacated and judgment arrested;
Resisting a public officer: Remanded for resentencing.

Judges MARTIN and HUDSON concur.