NO. COA13-1328

NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014

STATE OF NORTH CAROLINA

    v.

GARRY JEROME JAMISON

Cleveland County
Nos. 12 CRS 54858-60

Appeal by defendant from judgments and commitments entered 12 April 2013 by Judge J. Thomas Davis in Cleveland County Superior Court. Heard in the Court of Appeals 10 April 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Patrick S. Wooten, for the State.*

> *Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Paul M. Green, for defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Garry Jerome Jamison ("Defendant") appeals from judgments and commitments adjudging him guilty of first degree burglary, assault inflicting serious bodily injury, and assault on a female. Defendant contends that the trial court erred in denying his motion to dismiss the charges of assault inflicting serious bodily injury and first degree burglary. Defendant also contends that the trial court erred in allowing him to be convicted of both assault inflicting serious bodily injury and

assault on a female based on the same underlying conduct. For the following reasons, we hold that the trial court properly denied Defendant's motion to dismiss, but erred in convicting and sentencing Defendant for both categories of assault.

## I.   Factual & Procedural History

The facts of Defendant's case are not in dispute. Evidence presented at trial showed the following.

In April or May of 2012, Defendant's nine year relationship with his then-girlfriend, Amber Price, ended. During their relationship, Defendant and Ms. Price had two children together. After their break-up, Defendant moved out and interacted with Ms. Price only to arrange visitation with the children.

On 25 August 2012, however, Defendant telephoned Ms. Price repeatedly in order to see her the following day, Ms. Price's birthday. Ms. Price refused to see Defendant and told him that she was spending time at her parents' house with the children. That evening, while the children were with their grandparents, Ms. Price went to celebrate her birthday at her best friend Brittney Stevens' house. In addition to Ms. Price and Ms. Stevens, Ms. Stevens' two children and the children's father were present at the home.

Around 11:40 p.m., Defendant called Ms. Price demanding that she come get him and spend time with him for her birthday. Ms. Price again refused. Defendant told Ms. Price that if he found out that she was not at home with the children, he would kill her. While Ms. Price believed Defendant's threat to be credible, she remained at the party because she did not think Defendant knew that she was at Ms. Stevens' home. Ms. Price's testimony revealed, however, that she often celebrated her birthday with Ms. Stevens, a fact that was well-known by Defendant.

Sometime around midnight, Ms. Price heard a voice she recognized as Defendant's shouting profanities and making noise outside of Ms. Stevens' home. Upon hearing Defendant's voice, Ms. Price immediately attempted to close the front door to keep Defendant out of the house. Testimony indicated that the screen door was already closed, but not the front door itself. While Ms. Price attempted to close the front door, Defendant forced his way through the door and entered the home. Ms. Price, fearful for her life, attempted to run from Defendant, but could not escape. Defendant grabbed Ms. Price by the hair, knocked her to the ground, and began to beat her.

Meanwhile, Ms. Stevens took her two children and placed them in her car, where they remained with their father during the incident. While outside, Ms. Stevens heard Ms. Price screaming for help. Ms. Stevens went back into the house and attempted to place herself between Defendant and Ms. Price. Defendant continued to kick and beat Ms. Price, but did not harm Ms. Stevens. After the beating, Defendant told Ms. Stevens that it was nothing against her or her family, but that Ms. Price was a "lying bitch." Thereafter, Defendant left the premises and Ms. Stevens called the police. Defendant was subsequently arrested on 6 September 2012.

On 11 and 12 April 2013, Defendant was tried in Cleveland County Superior Court on charges of first degree burglary, assault inflicting serious bodily injury, and assault on a female. Defendant was convicted of all three crimes. The trial court sentenced Defendant to an active sentence of 64-89 months imprisonment for the first degree burglary. With respect to the assault convictions, Defendant received an additional consecutive sentence of 16-29 months imprisonment, which was suspended by the trial court for 36 months of supervised probation. Defendant gave timely notice of appeal in open court.

## II.  Jurisdiction

Defendant's appeal from the superior court's final judgments lies of right to this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b), 15A-1444(a) (2013).

## III. Analysis

Defendant challenges the trial court's judgments with three arguments on appeal: (1) that there was insufficient evidence of a "serious bodily injury" presented at trial to support the charge of assault inflicting serious bodily injury; (2) that there was insufficient evidence of a "breaking" to support the charge of first degree burglary; and (3) that the trial court erred in entering a judgment for assault inflicting serious bodily injury and for assault on a female based on the same underlying conduct.  We address each of Defendant's arguments in turn.

## A. Evidence Supporting a "Serious Bodily Injury"

Defendant contends that the trial court erred in denying his motion to dismiss the charge of assault inflicting serious bodily injury because the evidence presented at trial was not sufficient to show that Ms. Price, in fact, suffered a "serious bodily injury."  We disagree.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.'" *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)), *cert. denied*, 531 U.S. 890 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78–79, 265 S.E.2d 164, 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135 (1995).

The crime of assault inflicting serious bodily injury requires a showing of two elements: "(1) the commission of an assault on another, which (2) inflicts serious bodily injury."

*State v. Williams*, 150 N.C. App. 497, 501, 563 S.E.2d 616, 619 (2002) (quotation marks and citation omitted). Pertinent here, the General Assembly has defined a "serious bodily injury" as a "bodily injury that creates a substantial risk of death, or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization." N.C. Gen. Stat. § 14-32.4 (2013). In interpreting this statutory language, we have previously held that "the General Assembly intended for N.C.G.S. § 14-32.4 to cover those assaults that are especially violent and result in the infliction of extremely serious injuries." *Williams*, 150 N.C. App. at 503, 563 S.E.2d at 619. Thus, a "serious bodily injury" as set forth in N.C. Gen. Stat. § 14-32.4 "requires proof of more severe injury than the 'serious injury' element of other assault offenses." *Id.* at 503, 563 S.E.2d at 619–20.

Accordingly, our task in reviewing the record below is to determine whether there is substantial evidence that Ms. Price suffered an injury rising to this level of severity. However, in making this determination, we do not consider the entire definition set forth in N.C. Gen. Stat. § 14-32.4. Rather, "we

are limited to that part of the definition set forth in the trial court's instructions to the jury." *Id.* at 503, 563 S.E.2d at 620. Here, the trial court instructed the jury as follows:

> Serious bodily injury is injury that creates or causes a permanent or protracted condition that causes extreme pain or permanent or protracted loss or impairment of the functions of any bodily member or organ.

"It is well settled that a defendant may not be convicted of an offense on a theory of guilt different from that presented to the jury." *Id.* Thus, we limit our review to the evidence presented at trial that supports the definition of "serious bodily injury" given to the jury.

Viewing the evidence presented at trial in a light most favorable to the State, we hold that there is substantial evidence that Ms. Price suffered a "serious bodily injury" from Defendant's assault. Ms. Price testified that the beating left her with broken bones in her face, a broken hand, a cracked knee, and an eye so beat up and swollen that she still could not see properly out of it at the time of trial. She indicated that she had a footprint and other bruises on her face, as well as bruises on her neck, stomach, and back. Ms. Price testified that she had "been stomped everywhere." She reported having to go back to the hospital for a second time because of pain and

dizziness. She indicated that her pain lasted for five to six weeks after the attack and that she still had pain in her hand. She stated, "my hand and my eye hurt all of the time." Photographs of Ms. Price's injuries were also admitted into evidence to supplement her testimony.

Brittney Stevens also testified concerning Ms. Price's injuries. Ms. Stevens indicated that the beating left Ms. Price bloody at the scene of the crime. Ms. Stevens reported that Ms. Price wore sunglasses for several weeks to hide bruising and black eyes.

Ms. Price's mother corroborated the testimony given by Ms. Price and Ms. Stevens and added that Ms. Price had bloodshot eyes and a tooth filling that came loose as a result of the beating. The mother also stated that Ms. Price had trouble writing with her injured hand. Joseph Mullen, Ms. Price's emergency room physician, characterized Ms. Price's injuries as "serious."

We believe the foregoing evidence to be more than sufficient to withstand a motion to dismiss. This evidence, particularly Ms. Price's ongoing trouble with her hand and eye, provides substantial evidence of a "permanent or protracted condition that causes extreme pain" and a "permanent or

protracted loss or impairment of the functions of a bodily member or organ." Accordingly, Defendant's argument is without merit.

**B. Evidence Supporting a "Breaking"**

Defendant's second argument on appeal is that there was insufficient evidence of a "breaking" presented at trial to withstand a motion to dismiss on the charge of first degree burglary.

Again, in reviewing the sufficiency of the evidence on a motion to dismiss, our task is to determine whether, when viewed in a light most favorable to the State, there is substantial evidence of each element of the offense charged. *Fritsch*, 351 N.C. at 378, 526 S.E.2d at 455.

> To warrant a conviction for burglary the State's evidence must show that there was a breaking and entering during the nighttime of a dwelling or sleeping apartment with intent to commit a felony therein. If the burglarized dwelling is occupied it is burglary in the first degree; if unoccupied, it is burglary in the second degree.

*State v. Wilson*, 289 N.C. 531, 538, 223 S.E.2d 311, 315 (1976) (internal citations omitted); *see also* N.C. Gen. Stat. § 14-51 (2013). Furthermore, "[i]f any force at all is employed to effect an entrance through any usual or unusual place of ingress, whether open, partly open, or closed, there is a

breaking sufficient in law to constitute burglary, if the other elements of the offense are present." *Wilson*, 289 N.C. at 539, 223 S.E.2d at 316 (quotation marks and citations omitted).

Here, uncontroverted testimony at trial established that the screen door was closed and that Ms. Price was attempting to close the front door when Defendant forced his way into the home. Pursuant to *Wilson*, we hold that this testimony provides substantial evidence that a "breaking" occurred.

Defendant acknowledges that this controlling precedent warrants our holding on this issue. Nevertheless, Defendant wishes to preserve this argument for a later appeal to our Supreme Court. Accordingly, we find no error in the trial court's first degree burglary judgment and note Defendant's objection for purposes of later appellate review.

**C. Judgments and Commitments for Two Categories of Assault**

Defendant's third argument on appeal is that the trial court erred when it sentenced Defendant for assault inflicting serious bodily injury and assault on a female based on the same underlying conduct. Specifically, Defendant argues that the plain language of our assault statutes mandates punishment only for the more serious crime.

At the outset, we acknowledge that "[i]n order to preserve a question for appellate review, a party must have presented the trial court with a timely request, objection or motion, stating the specific grounds for the ruling sought if the specific grounds are not apparent." *State v. Eason*, 328 N.C. 409, 420, 402 S.E.2d 809, 814 (1991); *see also* N.C. R. App. P. 10(a)(1). Here, Defendant admits that he did not object to the trial court entering a consolidated judgment and commitment for both assaults. However, "'[w]hen a trial court acts contrary to a statutory mandate, the defendant's right to appeal is preserved despite the defendant's failure to object during trial.'" *State v. Braxton*, 352 N.C. 158, 177, 531 S.E.2d 428, 439 (2000) (quoting *State v. Lawrence*, 352 N.C. 1, 13, 530 S.E.2d 807, 815 (2000)), *cert. denied*, 531 U.S. 1130 (2001). Accordingly, because Defendant contends that the trial court erred in its interpretation and application of statutory provisions, we review the merits of Defendant's argument notwithstanding his failure to object at trial.

"Issues of statutory construction are questions of law, reviewed de novo on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010). "'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362

N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

Assault on a female is a statutory crime in North Carolina:

> *Unless the conduct is covered under some other provision of law providing greater punishment*, any person who commits any assault, assault and battery, or affray is guilty of a Class A1 misdemeanor if, in the course of the assault, assault and battery, or affray, he or she:
>
> . . . .
>
> (2) Assaults a female, he being a male person at least 18 years of age[.]

N.C. Gen. Stat. § 14-33(c) (2013) (emphasis added). Defendant argues that the plain language of the prefatory clause contained in this statute, *i.e.*, "[u]nless the conduct is covered under some other provision of law providing greater punishment," reveals an intent by our General Assembly to limit a trial court's authority to impose punishment for assault on a female when punishment is also imposed for higher class offenses that apply to the same conduct. Here, because Defendant was also convicted and sentenced for assault inflicting serious bodily injury, a felony, Defendant argues that he should not be punished for committing an assault on a female. *Compare* N.C. Gen. Stat. § 14-33(c) (classifying assault on a female as a

Class A1 misdemeanor), *with* N.C. Gen. Stat. § 14-32.4 (classifying assault inflicting serious bodily as a Class F felony). We agree.

As our Supreme Court has stated,

> [t]he intent of the Legislature controls the interpretation of a statute. When a statute is unambiguous, this Court will give effect to the plain meaning of the words without resorting to judicial construction. [C]ourts must give [an unambiguous] statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein.

*State v. Davis*, 364 N.C. 297, 302, 698 S.E.2d 65, 68 (2010) (second and third alterations in original) (internal quotation marks and citations omitted).

Here, Defendant's interpretation of the assault on a female statute comports with its plain language. The prefatory clause unambiguously bars punishment for assault on a female when the conduct at issue is punished by a higher class of assault. Furthermore, this interpretation is consistent with previous decisions of our appellate courts dealing with other statutes that contain identical prefatory language. *See, e.g.*, *id.* at 304-05, 698 S.E.2d at 69-70 (collecting cases).

Accordingly, because Defendant was convicted and sentenced for both categories of assault in the court below, the trial

court acted contrary to the statutory mandate of N.C. Gen. Stat. § 14-33(c).

## IV.  Conclusion

For the foregoing reasons, we arrest judgment in 12 CRS 54858 (assault on a female) and remand for resentencing in 12 CRS 54860 (assault inflicting serious bodily injury). Otherwise, we find no error.

Judgment Arrested and Remanded in part; No Error in part.

Judges STROUD and DILLON concur.