McGEE, Chief Judge.
 

 *169
 
 Kwanissda Williams ("Defendant") appeals her convictions on charges of resisting a law enforcement officer ("resisting") and assault inflicting serious bodily injury on a law enforcement officer ("AISBI"). Defendant contends the trial court erred by denying her pretrial motion to suppress and her motions to dismiss. We hold that the trial court erred in denying Defendant's motion to dismiss the charge of AISBI, reverse, and remand for entry of judgment on assault of a law enforcement officer inflicting physical injury, but otherwise find no error.
 

 *170
 
 I.
 
 Background
 

 Officer Josh Smith ("Officer Smith") of the Gastonia Police Department was performing patrol duties on the evening of 11 June 2014. He received a "trespass call" from dispatch to respond to an incident at Power in the Word Ministries, a local homeless shelter ("the shelter") at approximately 9:45 p.m. The police dispatcher relayed that a woman "was refusing to leave the [shelter]."
 

 When Officer Smith arrived at the shelter, he made contact with the woman who "was in charge that night" ("shelter representative").
 
 [1]
 
 The shelter representative "pointed out [Defendant], wh[o] was down the street," and told Officer Smith "that they wanted to trespass her."
 
 [2]
 
 Officer Smith testified:
 

 Usually when a business wants to trespass someone they'll want to make sure they have all their information, their name, date of birth, in case they want to-if they come back they can go obtain a warrant for trespassing, which is second-degree trespass. And a lot of times we'll go and we'll try and get that information.
 

 The shelter representative identified Defendant as "Kwani," and Defendant was seen walking down the street away from the shelter.
 

 Officer Smith pulled up alongside Defendant in his police vehicle, approximately 200 yards from the shelter, with the intent to investigate and potentially "trespass" Defendant from the shelter. Officer Smith "got out of [his vehicle], and began speaking with" Defendant. Officer Smith noticed that Defendant was "clearly agitated at the event," and seemed uncomfortable speaking with him. Officer Smith testified that Defendant was
 

 [p]acing back and forth, you know, when I was trying to speak with her she had her voice raised, agitated. I actually had to tell her, hey, come back and speak with me, you know, they are wanting to trespass you and I need to speak with you and get some information from you.
 

 Officer Smith testified that, when he asked Defendant her name, she hesitated, but then stated that her name was "Brenda Smith," which conflicted with the name "Kwani" that had been provided by the shelter
 
 *171
 
 representative. Officer Smith asked Defendant where she was from and again she hesitated, then said "Florida." Officer Smith testified that, based on his training and experience, he believed Defendant's hesitation and demeanor indicated she had given him false information, and he confronted Defendant about whether she had given him a false name. Officer Smith testified he informed Defendant that he needed to obtain her information in order to "trespass" her from the shelter and once she provided that information, she would be free to go.
 

 Officer Smith testified Defendant became more agitated and began to walk away from him, back toward the shelter, yelling: "Jesus, Jesus." Officer Smith testified that he "requested another officer," and told Defendant "until I can positively identify you I'm going to detain you." Defendant responded by saying "f_ck you" to Officer Smith. At that point, Officer Smith requested that Defendant put her hands behind her back, saying: "I'm going to detain you until I figure out who you are." Officer Smith placed his hands
 
 *573
 
 on Defendant to begin putting her in handcuffs, but she pulled away from him and continued walking in the direction of the shelter. Officer Smith then informed Defendant she was under arrest for resisting a police officer, but Defendant continued to walk away from him. At this time, "[i]nstead of using anything [Officer Smith] decided just to take [Defendant] to the ground gently by just the leg sweep. [He] grabbed her about her shoulders, and ... [placed his] foot, and ... just guided her to the ground. And that's whe[n] the assault began."
 

 Officer Smith and Defendant both landed on the pavement, with Officer Smith's arm next to Defendant's head. Officer Smith testified that, at that point, Defendant bit him in the middle of his left forearm and he experienced "instant ... significant pain[,]" during which time Defendant was "tugging and pulling" on Officer Smith's arm so that he was "seeing the skin get stretched beyond what it usually gets stretched." However, the skin on Officer Smith's arm was not removed, and the muscle underneath was not exposed. Officer Smith began "to knee" Defendant and applied pressure to Defendant's jaw in order to get her to release her bite, which Defendant eventually did, but Defendant then bit Officer Smith's arm again. At that point, Officer Smith struck Defendant in her face with his elbow three times, which caused Defendant to release her bite. Officer Smith estimated the incident lasted thirty to forty-five seconds, and testified that no back-up arrived before the end of the incident. Once Officer Smith was able to break free from Defendant, he jumped on top of her, and "[a]t this point [his] secondary officers had showed up" and they were able to subdue Defendant.
 

 *172
 
 Emergency Medical Services ("EMS") arrived at the scene. Officer Smith testified that his arm was red and bleeding from a wound about an "inch in circumference[.]" Officer Smith testified that, in addition to the bite mark, he sustained "a couple scratches ... on the side of [his] face" that required no medical attention. Once EMS arrived at the scene, Officer Smith testified they "just disinfected [the bite wound ], really." Officer Smith engaged in the following colloquy at trial:
 

 Q. Were you then directed to, by either EMS or your supervisor, to go to the hospital for treatment?
 

 A. Yes, ma'am.
 

 Q. Is that part of the standard procedure, or treatment procedure, or exposure procedure?
 

 A. Yes, ma'am.
 

 Q. And did you receive any further treatment at the hospital?
 

 A. Yes, ma'am. Any time we get exposed, whether it be needles, bites, stuff like that, we have go through a procedure through the hospital. They draw your blood initially to see if there's anything already there. They also do random drug testing. And while there I believe I got a Tetanus shot. And was basically sent home.
 

 Q. And did you go home or go back on duty?
 

 A. I went to the station in order to do paperwork.
 

 Officer Smith's wound did not require stitches, but he was provided a prescription for a "prophylactic" and checked every three months for a nine-month period to insure he had not contracted any disease, which he did not. The following day, Officer Smith returned to work.
 

 Photos taken "a day or so" after the incident were introduced into evidence and showed that Officer Smith's "forearm [was] swollen from the bite mark compared to [his] left. [He] believe[d] there [was] a second [photo] ... comparing both [his] arms somewhere, maybe." Additional photographs of Officer Smith's injury were introduced, including one where he had "put some ointment on" the injury to facilitate healing, and that photo "show[ed] bruising to begin." Three days after the incident, Officer Smith took photographs of his injury that depicted "bruising of [his] entire forearm." Officer Smith took additional photographs over the next few weeks that showed "some healing" followed by the injury being
 
 *173
 
 "scabbed over," and finally "the beginning scarring, and healing." Officer Smith testified the bite left a permanent "discoloration of [his] skin on [his]
 
 *574
 
 forearm ... in the shape of a [one-inch diameter] bite mark."
 

 Defendant was indicted on 7 July 2014 for assault on a law enforcement officer inflicting serious bodily injury and resisting, delaying, and obstructing a law enforcement officer. Defendant filed a pretrial motion to suppress all evidence obtained pursuant to the 11 June 2014 stop, arguing that Officer Smith lacked reasonable suspicion to detain her, which the trial court denied by order entered 13 April 2016. At trial, Defendant made a motion to dismiss at the close of the State's evidence and at the close of all the evidence, both of which the trial court denied.
 

 A jury convicted Defendant on 15 April 2016 of resisting and AISBI. Defendant was sentenced to ten to twenty-one months' imprisonment. Defendant appeals.
 

 II.
 
 Motion to Suppress
 

 Defendant argues the trial court erred because it failed to hear sworn testimony before denying her motion to suppress as required by N.C. Gen. Stat. § 15A-977(d) (2015). We disagree.
 

 A. Standard of Review
 

 Defendant contends the trial court's error involved an error in interpreting N.C.G.S. § 15A-977(d). "An alleged error in statutory interpretation is an error of law, and thus our standard of review for this question is
 
 de novo.
 
 "
 
 State v. Skipper
 
 ,
 
 214 N.C.App. 556
 
 , 557,
 
 715 S.E.2d 271
 
 , 272 (2011) (citation and quotation marks omitted). "Under
 
 de novo
 
 review, this Court 'considers the matter anew and freely substitutes its own judgment for that of the [trial court].' "
 
 State v. Ward
 
 ,
 
 226 N.C.App. 386
 
 , 388,
 
 742 S.E.2d 550
 
 , 552 (2013) (citation omitted) (alteration in original).
 

 B. Analysis
 

 N.C.G.S. § 15A-977 sets forth the requirements for a motion to suppress evidence in superior court. The motion must state the grounds upon which it is made and must be accompanied by an affidavit containing supporting facts. N.C.G.S. § 15A-977(a). The trial court may "summarily deny the motion to suppress evidence if:"
 

 (1) The motion does not allege a legal basis for the motion; or
 

 (2) The affidavit does not as a matter of law support the ground alleged.
 

 *174
 
 N.C.G.S. § 15A-977(c). If the motion is not summarily determined, then the trial court must make a determination after a hearing, which must include testimony given under oath. N.C.G.S. § 15A-977(d). As our Supreme Court has noted, summary resolution of motions to suppress is encouraged:
 

 As we noted in
 
 Holloway
 
 , the official commentary to section 15A-977 explains that the statute "is structured 'to produce in as many cases as possible a summary granting or denial of the motion to suppress. The defendant must file an affidavit as to the facts with his motion.' " Read in isolation, this language could suggest that the affidavit has some evidentiary purpose; however, the Court in
 
 Holloway
 
 omitted the following portion of the official commentary, which states:
 

 [T]he State may file an answer denying or admitting facts alleged in the affidavit. If the motion cannot be otherwise disposed of, subsection (d) provides for a hearing at which testimony under oath will be given.
 

 ....
 

 Considered as a whole, the text of the statute and the official commentary make clear that the information presented in a section 15A-977(a) affidavit is
 
 designed to assist the trial court in determining whether defendant's allegations merit a full suppression hearing
 
 .
 
 See
 
 [N.C.G.S.] § 15A-977(c)(2) (stating that the trial court "may summarily deny the motion to suppress evidence if ... [t]he affidavit does not as a matter of law support the ground alleged"). The statute does not say that the affidavit may be considered as evidence
 
 at that hearing
 
 . In contrast, the text of section 15A-977(d) states that the facts supporting the trial court's decision to grant or deny a defendant's suppression motion will be established at the suppression hearing on the basis of "testimony" given "under oath." In this respect, the section 15A-977(a) affidavit functions merely as a procedural prerequisite
 
 to secure
 

 *575
 

 the summary granting, or avoid the summary denial, of the motion to suppress
 
 .
 

 State v. Salinas
 
 ,
 
 366 N.C. 119
 
 , 125-26,
 
 729 S.E.2d 63
 
 , 67-68 (2012) (emphasis added) (citations omitted). The trial court is only required to
 
 *175
 
 hear sworn testimony when it does not summarily decide a motion to suppress. N.C.G.S. § 15A-977(a) - (d).
 

 Defendant filed her motion to suppress the morning of her trial, and the trial court heard arguments of counsel for both Defendant and the State. Defendant argued that Officer Smith's detention of Defendant was not an investigatory stop and, even if it was, it was not supported by reasonable suspicion. Neither Defendant nor the State requested to put on evidence; they simply argued why the law, as applied to the facts alleged, supported their differing positions. Therefore, the trial court did not hear any testimony before denying Defendant's motion.
 

 Defendant argues the trial court's failure to hear sworn testimony before denying her motion to suppress resulted in insufficient competent evidence to support its ruling that the stop was lawful. Defendant's argument ignores the fact that testimony is only required if the trial court first determines it cannot dispose of the motion summarily. N.C.G.S. § 15A-977(a) - (d). We find that the trial court summarily denied Defendant's motion and, therefore, a full hearing with sworn testimony was not required.
 

 In order for Officer Smith to lawfully detain Defendant to investigate an alleged second-degree trespass, there needed to have been evidence from which a reasonable officer in Officer Smith's position could articulate a reasonable suspicion that Defendant was in violation of the relevant part of the following statute:
 

 (a) Offense.-A person commits the offense of second degree trespass if, without authorization, he enters or remains on premises of another:
 

 (1) After he has been notified not to enter or remain there by the owner, by a person in charge of the premises, by a lawful occupant, or by another authorized person[.]
 

 N.C. Gen. Stat. § 14-159.13
 
 (2015).
 

 Though Defendant's affidavit in support of her motion to suppress could not have been used as substantive evidence had the trial court conducted a N.C.G.S. § 15A-977(d) suppression hearing, the trial court was
 
 required
 
 to considered Defendant's affidavit in support of her motion to suppress in order to determine whether to summarily deny her motion.
 
 Salinas
 
 ,
 
 366 N.C. at 125-26
 
 ,
 
 729 S.E.2d at 67-68
 
 . The affidavit in support of Defendant's motion to suppress included the following:
 

 *176
 
 1. On Wednesday, June 11, 2014, just before 10 pm, a call for service was received related to a Civil Disturbance at [the shelter]. The caller alleged a female was refusing to leave the [shelter].
 

 2. Officer [Smith] responded to the request and arrived at the location within 3 minutes[.]
 

 3. According to Officer Smith, he first made contact at the [shelter], where he was advised the female had left the premises.
 

 4. Officer Smith then drove down the street and located the female described in the call and identified by the [shelter representative] walking on foot, away from the [shelter.]
 

 5. Officer Smith exited his patrol vehicle and told the female to come speak with him in reference to the alleged trespassing.
 

 6. The female was [ ] Defendant[.]
 

 [Officer Smith spoke with Defendant, who then attempted to walk away from Officer Smith and questioned why he was asking for her identification. Officer Smith informed Defendant of the request to trespass her from the shelter.]
 

 ....
 

 13. [Defendant] questioned the necessity of giving this information to Officer [Smith], and began to walk away again.
 

 14. Officer Smith believed [Defendant] then gave the name "Brenda Smith," but he acknowledged he already knew [ ] Defendant [ ] to be "[Kw]ani" from the information
 
 *576
 
 provided by the [shelter] during his contact with them.
 

 15. Officer Smith then accused [Defendant] of giving him a fake name and told [her] she [was] not free to leave and was being detained ... so he could handcuff her while he ascertained her identity.
 

 Defendant's affidavit clearly laid out alleged facts giving rise to a reasonable suspicion that Defendant had been trespassing at the shelter, and that Officer Smith detained Defendant as the only means of ascertaining her identity for the purposes of "trespassing" her from the shelter. Based upon the facts as set forth in Defendant's affidavit, Officer Smith's detention of Defendant was proper, and the trial court did not
 
 *177
 
 err in dismissing Defendant's motion to suppress without a full suppression hearing.
 
 Salinas
 
 ,
 
 366 N.C. at 125
 
 ,
 
 729 S.E.2d at 67-68
 
 ("[T]he information presented in a section 15A-977(a) affidavit is designed to assist the trial court in determining whether defendant's allegations merit a full suppression hearing.
 
 See
 
 [N.C.G.S.] § 15A-977(c)(2) (stating that the trial court 'may summarily deny the motion to suppress evidence if ... [t]he affidavit does not as a matter of law support the ground alleged')."). The information presented in Defendant's N.C.G.S. § 15A-977(a) affidavit was sufficient to allow the trial court to determine that Defendant's allegations did not merit a full suppression hearing because Defendant's "affidavit d[id] not as a matter of law support the ground alleged" for suppression. N.C.G.S. § 15A-977(c)(2).
 

 The fact that the trial court allowed the attorneys to argue did not convert the trial court's summary decision into a full N.C.G.S. § 15A-977(d) hearing. Arguments by counsel are not evidence and can, in this matter, be considered surplusage.
 
 See
 

 State v. Roache
 
 ,
 
 358 N.C. 243
 
 , 289,
 
 595 S.E.2d 381
 
 , 411 (2004) (citation omitted) (" 'it is axiomatic that the arguments of counsel are not evidence' ").
 

 Moreover, though the trial court was not required to make any findings of fact when it summarily denied Defendant's motion, to the extent that it did so, " 'irrelevant findings in a trial court's decision do not warrant a reversal of the trial court.' "
 
 State v. Hernandez
 
 ,
 
 170 N.C.App. 299
 
 , 305,
 
 612 S.E.2d 420
 
 , 424 (2005) (citations omitted). Pursuant to the foregoing, we hold the trial court's summary denial of Defendant's motion to suppress did not violate N.G.G.S. § 15A-977(d) and the trial court did not err in failing to hear sworn testimony before denying Defendant's motion.
 

 III.
 
 Motions to Dismiss
 

 Defendant argues the trial court erred in denying her motions to dismiss the charges of resisting and AISBI because the State failed to present sufficient evidence that Officer Smith was acting lawfully in discharging a duty of his office, and that the State failed to present sufficient evidence that Officer Smith incurred a serious bodily injury. We agree in part and disagree in part.
 

 A. Standard of Review
 

 "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo
 
 ."
 
 State v. Smith
 
 ,
 
 186 N.C.App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007) (citation omitted). "The standard of review for a motion to dismiss in a criminal case is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein,
 
 *178
 
 and (2) of defendant's being the perpetrator of such offense."
 
 State v. Irons
 
 ,
 
 189 N.C.App. 201
 
 , 204,
 
 657 S.E.2d 733
 
 , 735 (2008) (citation and internal quotation marks omitted).
 

 The evidence should be considered in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence. Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal.
 

 State v. Burke
 
 ,
 
 185 N.C.App. 115
 
 , 118,
 
 648 S.E.2d 256
 
 , 258-59 (2007) (citation and internal quotation marks omitted). However, "[i]f the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed."
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (2000) (citations and quotation marks omitted).
 

 *577
 
 B. Analysis
 

 1.
 
 Resisting an Officer
 

 The elements of obstruction or delay of an officer are as follows: (1) "the victim was a public officer;" (2) "the defendant knew or had reasonable grounds to believe that the victim was a public officer;" (3) "the victim was discharging or attempting to discharge a duty of his office;" (4) "the defendant resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office;" and (5) "the defendant acted willfully and unlawfully, that is intentionally and without justification or excuse."
 
 State v. Dammons
 
 ,
 
 159 N.C.App. 284
 
 , 294,
 
 583 S.E.2d 606
 
 , 612 (2003).
 

 Defendant challenges the third element of obstruction of an officer, arguing that Officer Smith was not discharging a lawful duty at the time he stopped Defendant because Officer Smith did not have a reasonable, articulable suspicion that Defendant had committed a crime. Having held above that the trial court did not err in finding that Officer Smith had a reasonable articulable suspicion upon which to stop and detain Defendant, we further hold that Officer Smith was discharging or attempting to discharge his duty as an officer at the time Defendant resisted him. This argument is without merit.
 

 2.
 
 Assault Inflicting Serious Bodily Injury on an Officer
 

 "[A] person is guilty of a Class F felony if the person assaults a law enforcement officer ... while the officer is discharging or attempting to
 
 *179
 
 discharge his or her official duties and inflicts serious bodily injury on the officer."
 
 N.C. Gen. Stat. § 14-34.7
 
 (a) (2015). "Serious bodily injury" is defined by statute as
 

 bodily injury that creates a substantial risk of death, or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization.
 

 N.C. Gen. Stat. § 14-32.4
 
 (a) (2015).
 

 To convict a defendant, there must be substantial evidence of the elements set forth in the jury instructions.
 
 State v. Rouse
 
 ,
 
 198 N.C.App. 378
 
 , 382,
 
 679 S.E.2d 520
 
 , 524 (2009). Whether a "serious bodily injury" has occurred:
 

 depends upon the facts of each case and is generally for the jury to decide under appropriate instructions. A jury may consider such pertinent factors as hospitalization, pain, loss of blood, and time lost at work in determining whether an injury is serious. Evidence that the victim was hospitalized, however, is not necessary for proof of serious injury.
 

 State v. Williams
 
 ,
 
 150 N.C.App. 497
 
 , 502,
 
 563 S.E.2d 616
 
 , 619 (2002) (citation omitted). In the case before us, the trial court instructed the jury that "[s]erious bodily injury is an injury that creates or causes serious permanent disfigurement, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ." Because the trial court limited its instruction concerning serious bodily injury to the above, we do not consider any other potential definitions of "serious bodily injury."
 
 See
 

 Id.
 
 at 503,
 
 563 S.E.2d at 620
 
 ("we are limited to that part of the definition set forth in the trial court's instructions to the jury").
 

 Further, the State agrees with Defendant that no evidence was presented showing permanent or protracted loss or impairment of a bodily member or organ. Because we agree with the State that no instruction on "permanent or protracted loss or impairment of the function of any bodily member or organ" was warranted, we consider only whether sufficient evidence supported a finding that Defendant's actions against Officer Smith resulted in a permanent or protracted condition causing extreme pain; or serious, permanent disfigurement.
 

 *180
 
 a. Permanent or protracted condition that causes extreme pain
 

 In
 
 State v. Williams
 
 , this Court considered whether the State presented sufficient
 
 *578
 
 evidence that a victim suffered serious bodily injury, defined by the trial court to the jury as "an injury that creates or causes a permanent or protracted condition that causes extreme pain."
 
 Williams
 
 ,
 
 150 N.C.App. at 503
 
 ,
 
 563 S.E.2d at 620
 
 . The victim in
 
 Williams
 
 suffered a broken jaw that was wired shut for two months, during which he lost thirty pounds, and the injury caused approximately $6,000.00 in damage to his teeth.
 
 Id
 
 . Evidence was also presented that the victim's ribs were broken and that he suffered continuing back spasms that affected his breathing and caused him to visit the emergency room twice.
 
 Id
 
 . Finally, a physician testified that the victim's injuries "would cause a person 'quite a bit' of pain and discomfort."
 
 Id
 
 . at 503-04,
 
 563 S.E.2d at 620
 
 . Based on these facts, this Court held "a reasonable juror could find this evidence sufficient to conclude that [the victim's] injuries created a 'protracted condition that caused extreme pain' " and thus the trial court did not err in denying the defendant's motion to dismiss.
 
 Id
 
 . at 504,
 
 563 S.E.2d at 620
 
 .
 

 In the present case, the facts do not support a conclusion that Officer Smith suffered "a permanent or protracted condition that cause[d] extreme pain."
 
 Id
 
 . Unlike in
 
 Williams
 
 , no medical testimony was presented as to the painful or permanent effects of Officer Smith's injury, nor were the effects of his injury as clearly severe as in
 
 Williams
 
 . Officer Smith testified he experienced "instant ... significant pain" when Defendant bit him, and that he "could actually feel and see the skin being pulled away from [his] muscle." Immediately afterwards, the bite injury was red and bleeding, and Officer Smith obtained medical attention, which involved disinfecting the wound and providing prophylactic medication, but did not require stitches or any other invasive medical treatment. After he was treated at the hospital, Officer Smith returned to the police station to complete paperwork, and was able to return to police work the next day. There was evidence that the bite caused swelling and bruising that apparently resolved in approximately one month's time, but there was no evidence that the injury continued to cause Officer Smith significant pain subsequent to his treatment at the hospital.
 

 While the bite itself was no doubt painful, there was insufficient evidence presented to the jury that the bite resulted in a "permanent or protracted condition causing extreme pain." Officer Smith's experience is not analogous to the injuries in
 
 Williams
 
 . Officer Smith does not state that he continued to have significant pain; rather, he experienced swelling and bruising in the following days and weeks. Furthermore, Officer Smith's ability to leave the hospital and return to the police
 
 *181
 
 station to complete paperwork, plus the fact that he returned to work the following day, demonstrates that his pain was not protracted, much less permanent. Thus, we find that the evidence in the present case was insufficient to support a finding that Defendant's bite resulted in "a permanent or protracted condition that cause[d] extreme pain."
 
 Williams
 
 ,
 
 150 N.C.App. at 503
 
 ,
 
 563 S.E.2d at 620
 
 .
 

 We find the facts in the present case more analogous to a 2009 opinion,
 
 State v. Williams
 
 ,
 
 201 N.C.App. 161
 
 ,
 
 689 S.E.2d 412
 
 (2009) ("
 
 Williams II
 
 ").
 

 With respect to [the victim] M.L.W., the State's evidence tended to show that ... defendant ... hit M.L.W. so hard that she fell to the ground. Defendant began kicking M.L.W. in the ribs; then picked her up by her neck and squeezed while he swung her body. She passed out.
 

 Id
 
 . at 182-83,
 
 689 S.E.2d at 424
 
 . Based upon these facts, this Court held:
 

 While M.L.W. received a vicious beating,.... and her ribs were still "sore" five months after the assault, in order to meet the statutory definition, the victim must experience "extreme pain" in addition to the "protracted condition."
 
 N.C. Gen. Stat. § 14-32.4
 
 (a). The State presented no evidence of extreme pain. Therefore, the trial court erred in denying defendant's motion to dismiss the charge of an assault upon M.L.W. inflicting serious bodily injury, and we must reverse his conviction of that offense[.]
 

 Id
 
 . at 184,
 
 689 S.E.2d at 425
 
 (citations omitted). While it may readily be inferred that the victim in
 
 Williams II
 
 suffered "extreme pain" during the course of the "vicious beating,"
 

 *579
 
 this Court required something more than the pain obviously associated with the infliction of the injury itself.
 
 Id
 
 . We hold that, while Officer Smith received a vicious bite, the evidence does not show that Officer Smith continued to experience "extreme pain" in addition to any "protracted condition."
 
 Id
 
 .
 

 b. Serious, permanent disfigurement
 

 The State further argues that Officer Smith suffered serious, permanent disfigurement because a bite-mark shaped "discoloration" remained on his forearm approximately two years after the incident. In support, the State argues that " 'disfigurement' is defined as '[t]o mar or spoil the appearance or shape of.' "
 
 State v. Downs
 
 ,
 
 179 N.C.App. 860
 
 , 861-62,
 
 635 S.E.2d 518
 
 , 519-520 (2006) (finding substantial evidence of serious permanent disfigurement where the victim suffered severe facial swelling, scalp abrasion, a fractured nose, and the loss of a tooth);
 
 see
 

 *182
 

 also
 

 id
 
 . at 861-62,
 
 635 S.E.2d at 519-20
 
 ("the fact remains that [the victim] suffered the permanent loss of his own live, natural tooth"). The State further argues that this Court has found a "scar amounts to permanent disfigurement."
 
 Williams II
 
 ,
 
 201 N.C.App. at 169-170
 
 ,
 
 689 S.E.2d at 416
 
 (finding one of the victims' injuries sufficient to conclude she suffered a serious bodily injury where she suffered a cracked pelvic bone, broken rib, torn ligaments in her back, and a deep cut over her left eye that never properly healed and left a scar).
 

 The State contends that any lasting mark or scar should be considered sufficient evidence of serious bodily injury, but this reasoning would create a bright-line rule at odds with a jury's fact-based determination. As this Court has noted, "the element of 'serious bodily injury' requires proof of more severe injury than the element of 'serious injury[.]' "
 
 State v. Hannah
 
 ,
 
 149 N.C.App. 713
 
 , 719,
 
 563 S.E.2d 1
 
 , 5 (2002). This Court further stated in
 
 Hannah
 
 :
 

 A review of the case law would suggest that our courts have found
 
 serious injury
 
 in situations that may not rise to the level of
 
 serious bodily injury
 
 as defined under N.C.G.S. § 14-32.4, for example: shards of glass in the arm and shoulder of a victim of a drive-by shooting into the victim's vehicles, coupled with an officer's observation that the victim was shaken,
 
 State v. Alexander
 
 ,
 
 337 N.C. 182
 
 ,
 
 446 S.E.2d 83
 
 (1994) ; a bullet that pierced through the shoulder of the victim, creating two holes in his upper body,
 
 State v. Streeter
 
 ,
 
 146 N.C.App. 594
 
 ,
 
 553 S.E.2d 240
 
 (2001) ; gunshot wound which resulted in multiple broken bones of the victim's arm,
 
 State v. Washington
 
 ,
 
 142 N.C.App. 657
 
 ,
 
 544 S.E.2d 249
 
 (2001) ; stab wound to the back and shoulder,
 
 State v. Grigsby
 
 ,
 
 351 N.C. 454
 
 ,
 
 526 S.E.2d 460
 
 (2000) ; and a broken wrist, chewed fingers and a gash in the head,
 
 State v. Wampler
 
 ,
 
 145 N.C.App. 127
 
 ,
 
 549 S.E.2d 563
 
 .
 

 Id
 
 . at 718, 563 S.E.2d at 5. While each case must be considered on its own facts, clearly, based upon the above cases, the presence of a minor scar or other mild disfigurement alone cannot be sufficient to support a finding of "serious bodily injury."
 
 Id
 
 .
 

 Thus, it is necessary to analyze all of the facts presented, rather than just the discoloration on Officer Smith's forearm. As discussed previously, Officer Smith's injury was mild enough to allow him to return to the police station to complete paperwork that same night. Unlike the injuries in
 
 Downs
 
 and
 
 Williams II
 
 , the totality of Officer Smith's injuries
 
 *183
 
 do not rise to "serious bodily injury" even though the incident resulted in a bite-shaped discoloration, or scar, on his forearm. Accordingly, the evidence as a whole was not sufficient to support a finding that Defendant's bite resulted in "serious permanent disfigurement."
 

 Pursuant to the foregoing, we find there was insufficient evidence to support the "serious bodily injury" element. The trial court erred in denying Defendant's motion to dismiss the charge of assault on a law enforcement officer inflicting serious bodily injury, and we reverse that conviction. However, the jury was also instructed on the lesser-included offense of assault on a law enforcement officer inflicting physical injury.
 

 (c) Unless covered under some other provision of law providing greater punishment, a person is guilty of a Class I felony if the person does any of the following:
 

 *580
 
 (1) Assaults a law enforcement officer ... while the officer is discharging or attempting to discharge his or her official duties and inflicts physical injury on the officer.
 

 ....
 

 For the purposes of this subsection, "physical injury" includes cuts, scrapes, bruises, or other physical injury which does not constitute serious injury.
 

 N.C. Gen. Stat. § 14-34.7
 
 (c)(1). The jury clearly found that Officer Smith sustained a "physical injury" when it convicted Defendant of assault on a law enforcement officer inflicting serious bodily injury. We hold that the evidence supports this charge, and remand to the trial court for entry of a judgment as upon a verdict of guilty of assault on a law enforcement officer inflicting physical injury, and for resentencing.
 
 See
 

 State v. Wilkins
 
 ,
 
 208 N.C.App. 729
 
 , 733,
 
 703 S.E.2d 807
 
 , 811 (2010).
 

 IV.
 
 Conclusion
 

 For the foregoing reasons, we find Defendant received a trial free from error on the charge of resisting an officer, but we reverse Defendant's conviction for assault on a law enforcement officer inflicting serious bodily injury, and remand for resentencing on the Class I felony charge of assault on a law enforcement officer inflicting physical injury.
 

 NO ERROR IN PART; REVERSED IN PART, AND REMANDED.
 

 Judges HUNTER, JR. and ZACHARY concur.
 

 [1]
 

 Officer Smith did not remember the name of the woman in charge.
 

 [2]
 

 Officer Smith was not familiar with Defendant before this interaction.