STATE OF NORTH CAROLINA v. TONY PERNELL ROUSE

No. COA09-56

(Filed 21 July 2009)

**Assault— inflicting serious bodily injury—definition—permanent or protracted condition causing extreme pain—evidence sufficient**

The trial court did not err by denying defendant's post-evidence motion to dismiss the charge of assault inflicting serious bodily injury where the trial court's instruction focused on a permanent or protracted condition causing extreme pain, and there was sufficient evidence that the victim suffered serious bodily injury under that instruction.

Appeal by defendant from judgments entered 30 July 2008 by Judge Paul L. Jones in Lenoir County Superior Court. Heard in the Court of Appeals 18 May 2009.

*Roy Cooper, Attorney General, by Robert M. Curran, Special Deputy Attorney General, for the State.*

*Sue Genrich Berry, for defendant-appellant.*

MARTIN, Chief Judge.

Tony Pernell Rouse ("defendant") appeals from judgments entered upon his conviction by a jury of first degree burglary, first degree rape, first degree sex offense, assault inflicting serious bodily injury, attempted common law robbery, and first degree kidnapping. For the reasons below, we find no error.

The State's evidence at trial tended to show that, sometime after midnight on 11 March 2007, M.J., a seventy-year-old woman living alone in Kinston, went to her back door to check the lock before going to bed. Looking out a back window, M.J. noticed a figure outside. As she reached to check the door, a fist came through the glass pane on the door and reached inside, trying to unlock the door. M.J. pushed against the door, but the intruder forced his way into her house and began hitting her, choking her, and threatening to kill her if she did not tell him where her money was. M.J. tried to fight him off, but the intruder grabbed her hair, tearing out a handful, and threw her to the kitchen floor. As he pressed her to the floor, M.J., who was struggling to breathe, told the intruder that although she did not have much money, what she did have was in her pocketbook in the kitchen. After taking the pocketbook, the intruder dragged M.J. into the bedroom and ordered her to take her clothes off while continuing to threaten and strike her.

The intruder forced M.J. to lie face down on the bed, then made her turn over while he penetrated her vagina with his fingers and penis. Afterwards, the intruder forced M.J. into the living room, where he made her lie face down on the sofa and tied her feet and hands behind her back. The intruder then threw a blanket over M.J. and told her not to move or he would kill her.

After some time, M.J. was able to free her hands and feet and call 911. Officers and paramedics were dispatched to M.J.'s home, and when they arrived, found M.J. "doubled over a lot, like she was in pain," with her face and hair covered in blood. There was also blood

on the floor throughout the house, and all over the bed. M.J. told officers what had happened and was then taken to the hospital, where she was treated for cuts on her hands, significant bruising, swelling and tenderness in her shoulder, abdominal pain, and a broken collarbone. Medical personnel treated M.J.'s cuts with stitches and placed her shoulder in a sling. A sexual assault examination and vaginal swab was performed by the nurse. M.J. received morphine and was prescribed additional pain medication, and later had to return to the emergency room due to an infection which developed in the sutured hand. M.J.'s regular doctor later prescribed medicine for anxiety suffered by M.J. since the home invasion.

After officers had determined that the intruder was no longer in the residence, a police K9 unit was dispatched to M.J.'s house. A tracking dog immediately picked up a scent at the back door and led his handler to the residence of defendant, a mere 60 yards from M.J.'s home. Pursuant to a consensual search of defendant's bedroom, officers found a pair of shoes, a jacket and a toboggan, all of which appeared to have blood on them. Defendant was placed under arrest and the Lenoir County Grand Jury later returned indictments alleging that defendant was a habitual felon and a violent habitual felon and charging defendant with first degree burglary, first degree rape, first degree sex offense, assault inflicting serious bodily injury, attempted common law robbery, and first degree kidnapping.

At trial, after the conclusion of the evidence, defendant made a motion to dismiss the charges for insufficiency of the evidence pursuant to N.C.G.S. § 15A-1227. The trial court excused the jury, addressed defendant's motion, and subsequently entered an order denying the motion to dismiss. On 30 July 2008, the jury returned its verdict finding defendant guilty on all charges. Defendant's motion to dismiss was renewed and again denied.

The trial court arrested judgment on the first degree kidnapping verdict, and imposed a judgment of second degree kidnapping. Defendant admitted his status as both a habitual felon and as a violent habitual felon. The trial court imposed four consecutive sentences of life imprisonment without parole in the first degree burglary, first degree rape, first degree sexual offense, and second degree kidnapping convictions, to be followed by two active sentences of 133 months to 169 months in the assault inflicting serious bodily injury and attempted common law robbery convictions.

Defendant has assigned several errors on appeal, but in his brief he abandons all but one. Defendant argues that the trial court erred by failing to dismiss the charge of assault inflicting serious bodily injury because there was insufficient evidence presented at trial that M.J. sustained a permanent or protracted condition that caused extreme pain. Defendant further contends that the trial court's failure to dismiss this charge was in violation of his rights under the 5th, 6th, and 14th Amendments to the United States Constitution and Article I, Sections 18, 19, 21, 23, 24 and 26 of the North Carolina Constitution. We disagree.

N.C.G.S. § 15A-1227 allows a defendant to move to dismiss a criminal charge when the evidence is not sufficient to sustain a conviction upon the close of all evidence and after return of a guilty verdict but before the entry of judgment. N.C. Gen. Stat. § 15A-1227(a)(2), (3) (2007). In ruling on a motion to dismiss for insufficiency of the evidence, the trial court must determine "whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citing *Thompson v. Wake County Bd. of Educ.*, 292 N.C. 406, 233 S.E.2d 538 (1977); *Comm'r. of Ins. v. Fire Ins. Rating Bureau*, 292 N.C. 70, 231 S.E.2d 882 (1977)). Evidence is not substantial if it raises only a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it. *State v. Hamilton*, 145 N.C. App. 152, 155, 549 S.E.2d 233, 235 (2001). If substantial evidence supports a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied. *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988).

When ruling on a motion to dismiss, all of the evidence should be considered in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence. *State v. Mitchell*, 109 N.C. App. 222, 224, 426 S.E.2d 443, 444 (1993). "Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal." *State v. King*, 343 N.C. 29, 36, 468 S.E.2d 232, 237 (1996). The denial of a motion to dismiss for insufficient evidence is a question of law, *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991), which

we review *de novo. State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007).

In the case at bar, defendant was charged and convicted of assault inflicting serious bodily injury, which "requires proof of two elements: (1) the commission of an assault on another, which (2) inflicts serious bodily injury." *State v. Hannah*, 149 N.C. App. 713, 717, 563 S.E.2d 1, 4 (citing *State v. Wampler*, 145 N.C. App. 127, 549 S.E.2d 563 (2001)), *disc. review denied*, 355 N.C. 754, 566 S.E.2d 81 (2002).

"Serious bodily injury" is defined as bodily injury that creates a substantial risk of death, or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization.

N.C. Gen. Stat. § 14-32.4 (a) (2007). Serious bodily injury as defined in N.C.G.S. § 14-32.4 requires proof of more severe injury than the serious injury element in other assault offenses. *State v. Williams*, 150 N.C. App. 497, 503, 563 S.E.2d 616, 619-20 (2002).

In the case at bar, the trial court's instruction to the jury on the element of serious bodily injury was not identical to the statutory definition. Instead, the trial court defined serious bodily injury as "an injury that . . . creates or causes a permanent or protracted condition that causes extreme pain." The trial court also instructed the jury as to the lesser included offense of assault inflicting serious injury.

It is well settled that "a defendant may not be convicted of an offense on a theory of guilt different from that presented to the jury." *State v. Helton*, 79 N.C. App. 566, 568, 339 S.E.2d 814, 816 (1986) (quoting *State v. Smith*, 65 N.C. App. 770, 773, 310 S.E.2d 115, 117, *modified and aff'd*, 311 N.C. 145, 316 S.E.2d 75 (1984)). Had the trial court instructed the jury on the complete definition of "serious bodily injury" set out in N.C.G.S. § 14-32.4, defendant's conviction could be sustained on any one of the discrete portions of the definition. However, since the trial court limited its instruction in the way that it did, we must determine whether the record contains substantial evidence that M.J. suffered from "a permanent or protracted condition that causes extreme pain."

In *Williams*, this Court addressed the sufficiency of evidence of serious bodily injury where a jury instruction limited the definition of

serious bodily injury to "an injury that creates or causes a permanent or protracted condition that causes extreme pain." *Williams*, 150 N.C. App. at 503, 563 S.E.2d at 620. In that case, the State presented evidence that the victim suffered a broken jaw that was wired shut for two months, and suffered back spasms for eight months, which resulted in two visits to the emergency room because of difficulty breathing. *Id.* The treating physician testified the victim's injury was the type of injury that caused " 'quite a bit' of pain and discomfort." *Id.* at 503-04, 563 S.E.2d at 620. This Court concluded that "a reasonable juror could find this evidence sufficient to conclude that [the victim's] injuries created a 'protracted condition that cause[d] extreme pain.' " *Id.* at 504, 563 S.E.2d at 620.

In the case at bar, the emergency room physician testified that M.J. had dried blood on her lips and in her nostrils, abdominal pain, a large bruise and swelling over her left collarbone, which "was very tender and she couldn't move her left shoulder very much because she was in so much pain." The physician also testified that she examined the cuts in M.J.'s hand for injuries to the tendon before stitching her up, and that, after X-rays revealed that M.J.'s collarbone was broken, she put M.J.'s shoulder in a sling. The physician also testified that M.J. received morphine in the emergency room and was prescribed additional medicine for pain, then had to return to the emergency room two days later due to an infection which had developed in the sutured hand, pursuant to which the stitches were removed, the wounds drained and re-sutured, and M.J. was prescribed antibiotics. Later at trial, the emergency room nurse who gathered the rape kit testified she was unable to use a speculum because M.J. was in so much pain and that collecting a vaginal swab was "very painful" for her.

Viewing this evidence in the light most favorable to the State, we hold that there was sufficient evidence that M.J. suffered a "serious bodily injury" consistent with the instruction given to the jury. Because a reasonable juror could find this evidence sufficient to conclude that M.J.'s injuries created a "protracted condition that cause[d] extreme pain," we conclude the trial court did not err in denying defendant's motion to dismiss, and this assignment of error is overruled.

No error.

Judges STEPHENS and HUNTER, JR. concur.