IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-2

 Filed: 4 December 2018

Alamance County, No. 13 CRS 58006

STATE OF NORTH CAROLINA

 v.

RONTEL VINCAE ROYSTER

 Appeal by defendant from judgment entered 4 October 2016 by Judge James

E. Hardin, Jr. in Alamance County Superior Court. Heard in the Court of Appeals

19 September 2018.

 Attorney General Joshua H. Stein, by Assistant Attorney General Kristin J.
 Uicker, for the State.

 Geeta N. Kapur and James D. Williams, Jr., for defendant.

 ELMORE, Judge.

 Defendant Rontel Vincae Royster appeals from judgment entered upon a jury

verdict finding him guilty of trafficking in cocaine by possession pursuant to N.C.

Gen. Stat. § 90-95(h)(3)(c). On appeal, defendant contends the trial court erred in

denying his motion to dismiss the trafficking charge because the State failed to

sufficiently prove that he knowingly possessed cocaine found in a black box in a

wooded area approximately eighteen hours after defendant allegedly produced the
 STATE V. ROYSTER

 Opinion of the Court

same box in exchange for his kidnapped father. We agree and vacate defendant’s

conviction accordingly.

 I. Background

 On 6 July 2015, a grand jury indicted defendant for trafficking in cocaine based

on his alleged possession of 400 grams or more of the substance on 29 December 2013.

The evidence presented at defendant’s 2016 trial tended to show the following.

 On the evening of 28 December 2013, Humberto Anzaldo was visiting friends

at the Otter Creek Mobile Home Park when he observed a heated argument between

two men known as Polo and Scrappy about the loss of $150,000.00. Anzaldo

overheard the men discuss kidnapping someone, and he later observed Polo, Scrappy,

and a man named Hector Lopez leave the trailer park in a gray two-door BMW.

 Defendant’s father, Ronald Royster (“Mr. Royster”), testified that two or three

Hispanic men came to his home looking for defendant that same evening. The men

entered Mr. Royster’s home, asked if he had spoken with defendant, put a gun to Mr.

Royster’s head, and tied his hands together with a cord. The men then led Mr.

Royster to a gray two-door BMW, blindfolded him, and drove him to an unknown

location, which he later learned to be the Otter Creek Mobile Home Park. Upon

arriving at the trailer park, the men phoned defendant and allowed Mr. Royster to

speak with him. Mr. Royster told defendant, “I don’t know what’s going on; you need

to come and talk to them.”

 -2-
 STATE V. ROYSTER

 Opinion of the Court

 Sometime the next morning, defendant and a man named Demarcus Cates

arrived at the trailer park in a white car. Polo, Lopez, and Anzaldo approached the

two men as they exited the car, while Scrappy led Mr. Royster out of a trailer and

into the car. According to Anzaldo, defendant produced a black box that was first

handed to Cates, passed around, and eventually given to Scrappy. None of the men

looked inside the box during this exchange, and Anzaldo specifically testified that he

did not know what was in the box on 29 December 2013.

 Shortly after the exchange, an argument broke out between Cates and Polo.

Anzaldo observed the two men yelling and shoving each other before he heard

gunshots and ran to the back of one of the trailers. Scrappy, while still holding the

box, also ran from the shooting and into the woods behind the trailer park.

Defendant, Cates, and Mr. Royster left the trailer park, and Polo died shortly

thereafter as a result of multiple gunshot wounds to the head.

 On the morning of 30 December 2018approximately eighteen hours after the

shootinglaw enforcement deployed eight K-9 units to perform a grid search of the

wooded area behind the trailer park. Fifty to seventy-five yards into the woods,

officers discovered a black box containing a large amount of cocaine. The box was

completely dry despite the heavy rain from the previous night, and a mason jar

containing additional cocaine was found nearby. The mason jar was also dry.

 -3-
 STATE V. ROYSTER

 Opinion of the Court

 At the close of the State’s evidence, defendant moved to dismiss the trafficking

charge on the basis that the State had failed to prove the essential element of

possession under N.C. Gen. Stat. § 90-95(h)(3)(c). Defense counsel specifically argued

 that the definition of possession, either actual or
 constructive, part of that definition is that the defendant
 must knowingly possess the substance; must be aware of
 its presence. And there is absolutely no evidence, at this
 point, that this Defendant was aware, in any fashion, of the
 contents of that box. . . . . Along with that, by [the box] not
 being found until 18 or so hours later, the last that we know
 it is in the possession of some individual by the name of
 Scrappy. . . . [T]he State has not been able to produce any
 evidence of what occurred between the time that [Scrappy]
 took possession of the box and the time it was found the
 next morning in a totally different location.

In denying defendant’s motion to dismiss, the trial court explained that “the State is

entitled to all reasonable inferences.”1

 Defendant chose not to testify on his own behalf, but offered evidence in the

form of testimony from one law enforcement officer who had been dispatched to the

trailer park on 30 December 2013. The officer indicated that Anzaldo had given

several inconsistent statements during the course of the investigation, and he

reiterated that the box of cocaine was found to be completely dry even though it had

rained heavily on the night of 29 December 2013.

 1 Co-defendant Cates was tried separately and convicted of voluntary manslaughter in
November 2015. See State v. Cates, ___ N.C. App. ___, 799 S.E.2d 279, 2017 WL 1650090 (2017)
(unpublished). At the conclusion of the State’s evidence in that trial, Judge Michael O’Foghludha
granted Cates’ motion to dismiss the charge of trafficking in cocaine by possession.

 -4-
 STATE V. ROYSTER

 Opinion of the Court

 At the close of all the evidence, defendant renewed his motion to dismiss the

trafficking charge, which the trial court again denied. Following the jury’s guilty

verdict, the trial court sentenced defendant to 175 to 222 months’ imprisonment.

Defendant appeals.

 II. Discussion

 In his sole argument on appeal, defendant contends the State failed to offer

substantial evidence that he knowingly possessed a certain amount of cocaine on 29

December 2013. Defendant emphasizes that “none of the State’s witnesses testified

about what was in the box” on that date and that “[e]ven the State’s key eyewitness,

Humberto Anzaldo, testified that he never looked in the black box on December 29,

2013 and didn’t know what was in it.” Thus, according to defendant, the trial court

erred in denying his motion to dismiss the trafficking charge for insufficient evidence.

We agree.

 “On a motion to dismiss for insufficient evidence, ‘[t]he question for the court

is whether substantial evidencedirect, circumstantial, or bothsupports each

element of the offense charged and defendant’s perpetration of that offense.’ ” State

v. Butler, 147 N.C. App. 1, 910, 556 S.E.2d 304, 310 (2001) (quoting State v.

McCullers, 341 N.C. 19, 29, 460 S.E.2d 163, 168 (1995)). “When ruling on a motion

to dismiss, all of the evidence should be considered in the light most favorable to the

State, and the State is entitled to all reasonable inferences which may be drawn from

 -5-
 STATE V. ROYSTER

 Opinion of the Court

the evidence.” State v. Rouse, 198 N.C. App. 378, 381, 679 S.E.2d 520, 523 (2009).

“Any contradictions or discrepancies arising from the evidence are properly left for

the jury to resolve and do not warrant dismissal.” State v. King, 343 N.C. 29, 36, 468

S.E.2d 232, 237 (1996). However, if the evidence “is sufficient only to raise a suspicion

or conjecture as to either the commission of the offense or the identity of the defendant

as the perpetrator of it, the motion for nonsuit should be allowed. This is true even

though the suspicion so aroused by the evidence is strong.” In re Vinson, 298 N.C.

640, 656–57, 260 S.E.2d 591, 602 (1979) (citations omitted). “The denial of a motion

to dismiss for insufficient evidence is a question of law, which we review de novo.”

Rouse, 198 N.C. App. at 38182, 679 S.E.2d at 523 (citations omitted).

 Pursuant to N.C. Gen. Stat. § 90-95(h)(3), any person who “possesses 28 grams

or more of cocaine . . . shall be guilty of a felony, which felony shall be known as

‘trafficking in cocaine[.]’ ” Additionally,

 if the quantity of such substance or mixture involved:

 

 c. Is 400 grams or more, such person shall be punished as
 a Class D felon and shall be sentenced to a minimum term
 of 175 months and a maximum term of 222 months in the
 State’s prison and shall be fined at least two hundred fifty
 thousand dollars ($250,000).

N.C. Gen. Stat. § 90-95(h)(3)(c) (2017).

 -6-
 STATE V. ROYSTER

 Opinion of the Court

 In the instant case, the State asserts that “there was substantial evidence

showing that on the day of the shooting, 29 December 2013, Defendant possessed the

black lockbox and that it contained 400 grams or more of cocaine.” As to evidence of

the exact contents of the box on that date, the State cites to (1) the heated argument

between Polo and Scrappy on the evening of 28 December 2013, (2) the kidnapping of

defendant’s father that same evening, (3) defendant’s production of a closed black box

in exchange for his father on the morning of 29 December 2013, and (4) the discovery

of a black box containing at least 996 grams of cocaine in the woods on the morning

of 30 December 2013. While we agree that this sequence of events raises a suspicion

as to the commission of the offense charged, we conclude that it is just that: a

suspicion. Thus, we hold that the trial court erred in denying defendant’s motion to

dismiss.

 III. Conclusion

 Because the State failed to present substantial evidence that defendant

possessed 400 grams or more of cocaine on 29 December 2013, the trial court should

have granted defendant’s motion to dismiss the charge of trafficking in cocaine by

possession, and we vacate defendant’s conviction accordingly.

 VACATED.

 Judge DAVIS concurs.

 Judge DILLON dissents by separate opinion.

 -7-
No. COA18-2 – State v. Royster

 DILLON, Judge, dissenting.

 Defendant was convicted of trafficking cocaine by possession. Police found a

large quantity of cocaine in a black box abandoned in the woods, the same black box

which Defendant gave as ransom to individuals who, the day before, had kidnapped

his father. Defendant argues that the trial court should have dismissed the

trafficking by possession charge, contending that the lapse of time between the time

Defendant possessed the black box and the time police discovered it the next day with

cocaine inside was too great to create a reasonable inference that there was cocaine

in the box when Defendant possessed it the day before. The majority agrees with

Defendant and has ordered the judgment be vacated.

 I respectfully dissent for two independent reasons, which I address in turn

below. First, Defendant did not preserve his argument on appeal because the basis

for his current argument on appeal is not the same as the basis of the argument

Defendant made before the trial court. And second, the time lapse from the time

Defendant possessed the box and the time drugs were discovered in the box, given

the other evidence, was not too great to foreclose a reasonable inference that drugs

were in the box when Defendant possessed the box. That is, while the evidence in

some cases may foreclose allowing juries from inferring that drugs found in a

container were in the container the day before, or even the hour before, the evidence

in this case does not foreclose such inference from being made.

 I. Waiver of Argument
 STATE V. ROYSTER

 DILLON, J., dissenting

 Defendant has not preserved his “insufficiency of the evidence” argument

because the ground for his argument on appeal is different from the ground he argued

before the trial court. See State v. Jones, 223 N.C. App. 487, 495, 734 S.E.2d 617, 623

(2012), aff’d, 367 N.C. 299, 758 S.E.2d 345 (2014) (holding that a defendant, making

a motion to dismiss at trial, has preserved the argument only on the ground asserted

at trial and that any other grounds to support the argument are waived on appeal).

 “Felonious possession of a controlled substance has two essential elements. [1]

The substance must be possessed and [2] the substance must be knowingly

possessed.” State v. Galaviz-Torres, 368 N.C. 44, 48, 772 S.E.2d 434, 437 (2015)

(emphasis added). The basis for Defendant’s motion at trial was based on the second

element, whether there was sufficient evidence that Defendant knew there was

cocaine in the black box when he possessed it. On appeal, though, Defendant’s

argument is based on the first element, whether there was sufficient evidence that

cocaine was, in fact, in the box at the time Defendant possessed it. Therefore,

Defendant has not preserved his argument for appeal.

 II. There Was Sufficient Evidence To Submit Charge to the Jury

 Even assuming that Defendant has preserved his argument, I conclude that

Judge Hardin got it right. While the evidence in some cases may foreclose allowing

juries from reasonably inferring that drugs found in a container were in the container

the day before, or even the hour before, the evidence in this case, taken in the light

 2
 STATE V. ROYSTER

 DILLON, J., dissenting

most favorable to the State, did not foreclose such inference from being made by the

jury.

 To be sure, there was no direct evidence that cocaine was in the black box at

the time Defendant possessed it: No one testified as to having seen cocaine in the box

when Defendant exchanged the box for the safe return of his father. However, I

conclude that the circumstantial evidence raised a strong enough inference that

cocaine was in the box at that time to allow the jury to make the call. Indeed, in my

view the strongest inference from the circumstantial evidence, taken in the light most

favorable to the State, suggests that cocaine was in the box at the time Defendant

possessed it. This circumstantial evidence tended to show as follows:

 Scrappy complained to Polo that he was upset that he had “lost $160,000 in

cocaine to some [] guys,” and Scrappy enlisted Polo to help him “straighten that out.”

That night, he and Polo kidnapped Defendant’s father. The next day, Defendant

arrived where his father was being held and exchanged the black box, which felt

“pretty heavy” to Scrappy, in return for his father. When an argument ensued and

gunshots were being fired, Scrappy ran into the woods clinging to the black box. The

next day, police found the black box abandoned in the woods with a large quantity of

cocaine inside.

 Based on the evidence, when viewed in the light most favorable to the State, a

juror could reasonably infer that there was cocaine in the black box when Defendant

 3
 STATE V. ROYSTER

 DILLON, J., dissenting

passed it to Scrappy. In my view, it is the strongest inference. It is certainly possible

that cocaine was somehow placed in the box after Defendant gave it to Scrappy. But

it seems unlikely that Scrappy would have left the woods, filled the box with over

$100,000 worth of cocaine, returned to the woods near the place of the shooting, and

abandoned the box and cocaine. In any event, whether the evidence established

Defendant’s guilt beyond a reasonable doubt was, in my view, a question for each

juror to determine, as Judge Hardin ruled. The jurors made their call, and the

judgment based on their verdict should stand.

 4