ELMORE, Judge.
*701 Defendant Rontel Vincae Royster appeals from judgment entered upon a jury verdict finding him guilty of trafficking in cocaine by possession pursuant to N.C. Gen. Stat. § 90-95(h)(3)(c). On appeal, defendant contends the trial court erred in denying his motion to dismiss the trafficking charge because the State failed to sufficiently prove that he knowingly possessed cocaine found in a black box in a wooded area approximately eighteen hours after defendant allegedly produced the same box in exchange for his kidnapped father. We agree and vacate defendant's conviction accordingly.
I. Background
On 6 July 2015, a grand jury indicted defendant for trafficking in cocaine based on his alleged possession of 400 grams or more of the substance on 29 December 2013. The evidence presented at defendant's 2016 trial tended to show the following.
*702 On the evening of 28 December 2013, Humberto Anzaldo was visiting friends at the Otter Creek Mobile Home Park when he observed a heated argument between two men known as Polo and Scrappy about the loss of $150,000.00. Anzaldo overheard the men discuss kidnapping someone, and he later observed Polo, Scrappy, and a man named Hector Lopez leave the trailer park in a gray two-door BMW.
Defendant's father, Ronald Royster ("Mr. Royster"), testified that two or three Hispanic men came to his home looking for defendant that same evening. The men entered *491 Mr. Royster's home, asked if he had spoken with defendant, put a gun to Mr. Royster's head, and tied his hands together with a cord. The men then led Mr. Royster to a gray two-door BMW, blindfolded him, and drove him to an unknown location, which he later learned to be the Otter Creek Mobile Home Park. Upon arriving at the trailer park, the men phoned defendant and allowed Mr. Royster to speak with him. Mr. Royster told defendant, "I don't know what's going on; you need to come and talk to them."
Sometime the next morning, defendant and a man named Demarcus Cates arrived at the trailer park in a white car. Polo, Lopez, and Anzaldo approached the two men as they exited the car, while Scrappy led Mr. Royster out of a trailer and into the car. According to Anzaldo, defendant produced a black box that was first handed to Cates, passed around, and eventually given to Scrappy. None of the men looked inside the box during this exchange, and Anzaldo specifically testified that he did not know what was in the box on 29 December 2013.
Shortly after the exchange, an argument broke out between Cates and Polo. Anzaldo observed the two men yelling and shoving each other before he heard gunshots and ran to the back of one of the trailers. Scrappy, while still holding the box, also ran from the shooting and into the woods behind the trailer park. Defendant, Cates, and Mr. Royster left the trailer park, and Polo died shortly thereafter as a result of multiple gunshot wounds to the head.
On the morning of 30 December 2018-approximately eighteen hours after the shooting-law enforcement deployed eight K-9 units to perform a grid search of the wooded area behind the trailer park. Fifty to seventy-five yards into the woods, officers discovered a black box containing a large amount of cocaine. The box was completely dry despite the heavy rain from the previous night, and a mason jar containing additional cocaine was found nearby. The mason jar was also dry.
At the close of the State's evidence, defendant moved to dismiss the trafficking charge on the basis that the State had failed to prove the *703 essential element of possession under N.C. Gen. Stat. § 90-95(h)(3)(c). Defense counsel specifically argued
that the definition of possession, either actual or constructive, part of that definition is that the defendant must knowingly possess the substance; must be aware of its presence. And there is absolutely no evidence, at this point, that this Defendant was aware, in any fashion, of the contents of that box. .... Along with that, by [the box] not being found until 18 or so hours later, the last that we know it is in the possession of some individual by the name of Scrappy.... [T]he State has not been able to produce any evidence of what occurred between the time that [Scrappy] took possession of the box and the time it was found the next morning in a totally different location.
In denying defendant's motion to dismiss, the trial court explained that "the State is entitled to all reasonable inferences."[1]
Defendant chose not to testify on his own behalf, but offered evidence in the form of testimony from one law enforcement officer who had been dispatched to the trailer park on 30 December 2013. The officer indicated that Anzaldo had given several inconsistent statements during the course of the investigation, and he reiterated that the box of cocaine was found to be completely dry even though it had rained heavily on the night of 29 December 2013.
At the close of all the evidence, defendant renewed his motion to dismiss the trafficking charge, which the trial court again denied. Following the jury's guilty verdict, the trial court sentenced defendant to 175 to 222 months' imprisonment. Defendant appeals.
II. Discussion
In his sole argument on appeal, defendant contends the State failed to offer substantial evidence that he knowingly possessed *492 a certain amount of cocaine on 29 December 2013. Defendant emphasizes that "none of the State's witnesses testified about what was in the box" on that date and that "[e]ven the State's key eyewitness, Humberto Anzaldo, *704 testified that he never looked in the black box on December 29, 2013 and didn't know what was in it." Thus, according to defendant, the trial court erred in denying his motion to dismiss the trafficking charge for insufficient evidence. We agree.
"On a motion to dismiss for insufficient evidence, '[t]he question for the court is whether substantial evidence-direct, circumstantial, or both-supports each element of the offense charged and defendant's perpetration of that offense.' " State v. Butler , 147 N.C. App. 1, 9-10, 556 S.E.2d 304, 310 (2001) (quoting State v. McCullers , 341 N.C. 19, 29, 460 S.E.2d 163, 168 (1995) ). "When ruling on a motion to dismiss, all of the evidence should be considered in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence." State v. Rouse , 198 N.C. App. 378, 381, 679 S.E.2d 520, 523 (2009). "Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal." State v. King , 343 N.C. 29, 36, 468 S.E.2d 232, 237 (1996). However, if the evidence "is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion for nonsuit should be allowed. This is true even though the suspicion so aroused by the evidence is strong." In re Vinson, 298 N.C. 640, 656-57, 260 S.E.2d 591, 602 (1979) (citations omitted). "The denial of a motion to dismiss for insufficient evidence is a question of law, which we review de novo ." Rouse , 198 N.C. App. at 381-82, 679 S.E.2d at 523 (citations omitted).
Pursuant to N.C. Gen. Stat. § 90-95(h)(3), any person who "possesses 28 grams or more of cocaine ... shall be guilty of a felony, which felony shall be known as 'trafficking in cocaine[.]' " Additionally,
if the quantity of such substance or mixture involved:
....
c. Is 400 grams or more, such person shall be punished as a Class D felon and shall be sentenced to a minimum term of 175 months and a maximum term of 222 months in the State's prison and shall be fined at least two hundred fifty thousand dollars ($250,000).
N.C. Gen. Stat. § 90-95(h)(3)(c) (2017).
In the instant case, the State asserts that "there was substantial evidence showing that on the day of the shooting, 29 December 2013, Defendant possessed the black lockbox and that it contained 400 grams or more of cocaine." As to evidence of the exact contents of the box *705 on that date, the State cites to (1) the heated argument between Polo and Scrappy on the evening of 28 December 2013, (2) the kidnapping of defendant's father that same evening, (3) defendant's production of a closed black box in exchange for his father on the morning of 29 December 2013, and (4) the discovery of a black box containing at least 996 grams of cocaine in the woods on the morning of 30 December 2013. While we agree that this sequence of events raises a suspicion as to the commission of the offense charged, we conclude that it is just that: a suspicion. Thus, we hold that the trial court erred in denying defendant's motion to dismiss.
III. Conclusion
Because the State failed to present substantial evidence that defendant possessed 400 grams or more of cocaine on 29 December 2013, the trial court should have granted defendant's motion to dismiss the charge of trafficking in cocaine by possession, and we vacate defendant's conviction accordingly.
VACATED.
Judge DAVIS concurs.
Judge DILLON dissents by separate opinion.

Co-defendant Cates was tried separately and convicted of voluntary manslaughter in November 2015. See State v. Cates , --- N.C. App. ----, 799 S.E.2d 279, 2017 WL 1650090 (2017) (unpublished). At the conclusion of the State's evidence in that trial, Judge Michael O'Foghludha granted Cates' motion to dismiss the charge of trafficking in cocaine by possession.