IN THE SUPREME COURT OF NORTH CAROLINA

No. 441A18

Filed 1 November 2019

STATE OF NORTH CAROLINA

v.

RONTEL VINCAE ROYSTER

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 822 S.E.2d 489 (N.C. Ct. App. 2018), vacating a judgment entered on 4 October 2016 by Judge James E. Hardin, Jr. in Superior Court, Alamance County. Heard in the Supreme Court on 30 September 2019.

> *Joshua H. Stein, Attorney General, by Kristin J. Uicker, Assistant Attorney General, for the State-appellant.*
>
> *Jay H. Ferguson, Geeta N. Kapur, and James D. Williams, Jr., for defendant-appellee.*

EARLS, Justice.

Defendant Rontel Vincae Royster was convicted by a jury on 30 September 2016 of trafficking in cocaine by possession pursuant to N.C.G.S. § 90-95(h)(3)(c). Here we consider whether defendant waived appellate review of his sufficiency of the evidence argument by failing to raise it in the trial court and whether the trial court erred in denying defendant's motion to dismiss on the basis of insufficient evidence. The Court of Appeals concluded that the State failed to present substantial evidence that defendant possessed 400 grams or more of cocaine and vacated defendant's

conviction. *State v. Royster*, 822 S.E.2d 489 (N.C. Ct. App. 2018). We conclude that defendant did not waive his sufficiency of the evidence argument by failing to raise it in the trial court. As to the issue of whether the State presented sufficient evidence that defendant possessed 400 grams or more of cocaine on the date in question, the members of this Court are equally divided; accordingly, the holding of the Court of Appeals with respect to this issue is left undisturbed and stands affirmed without precedential value.

## I. Background

On 28 December 2013, at around 7:00 p.m., eighteen-year-old Humberto Anzaldo was visiting friends at the Otter Creek Mobile Home Park in Green Level, North Carolina, when he saw two acquaintances, Polo and Scrappy, having an argument. According to Anzaldo, Polo was "mad" and "was screaming and arguing at Scrappy about losing $150,000." Shortly thereafter, Anzaldo observed Polo, Scrappy, and another man, Hector Lopez, leave the mobile home park in a gray two-door BMW.

At approximately 8:30 p.m. that evening, defendant's father, Ronald Royster, was at his apartment in Burlington, North Carolina, when, hearing a knock on his door, he opened it to find several men outside, one of whom he recognized. Upon entering the apartment, one of the men asked Mr. Royster whether he had spoken with defendant. According to Mr. Royster, after he responded that he had not spoken with defendant, the man stated, "[w]ell, if you haven't talked to your son, come on

with us," and proceeded to point a gun at Mr. Royster's head and bind his hands with a cord. The men then walked Mr. Royster to a grey, two-door BMW, blindfolded him, and drove him to the Otter Creek Mobile Home Park. Upon arrival, Mr. Royster heard a phone being placed by his ear and recognized defendant's voice on the other end of the call. Mr. Royster told defendant, "I don't know what's going on; you need to come and talk to them."

The following morning, 29 December 2013, Anzaldo, having left the Otter Creek Mobile Home Park the previous evening not long after Polo and Scrappy departed, returned to the mobile home park at around 8:00 or 9:00 a.m. After ten or fifteen minutes, Anzaldo was walking toward his car to leave when he heard a whistle and saw Polo standing in front of a nearby mobile home. Anzaldo spoke with Polo and, through the door of the mobile home, saw Mr. Royster inside tied up with what appeared to be rope. According to Anzaldo, he told Polo "[y]ou can't be doing this; this ain't Mexico." Anzaldo was still speaking with Polo outside of the mobile home when a white Acura arrived at the mobile home park.

When defendant and another man, Demarcus Cates, got out of the Acura, Polo, Anzaldo, and Lopez went to meet them. Meanwhile, Scrappy led Mr. Royster, now untied and with his blindfold removed, out from behind the mobile home. Defendant told Mr. Royster to "get in the car" and Mr. Royster got in the back seat of the Acura. Defendant then handed Cates a black box, which was in turn passed to Polo, Scrappy, and Anzaldo, before being passed back to Scrappy. Anzaldo described the box as

"pretty heavy" and testified that no one looked inside the box during the encounter and that he did not know what was in it.

Following this exchange, Cates and Polo began arguing and then started yelling and shoving each other. Anzaldo turned around to leave, at which point he heard approximately four or five gunshots and ran behind a nearby mobile home. Anzaldo saw Scrappy, still holding the black box, run into the woods. After defendant, Cates, and Mr. Royster drove away in the Acura, Anzaldo saw Polo lying dead on the ground. Polo had been shot four times, including multiple gunshot wounds to his head.[1]

At approximately 9:30 on the following morning, officers from Alamance County's K-9 unit performed a grid search for guns and drugs in the woods behind the mobile home park. Behind a tree located about fifty to seventy-five yards into the wooded area, officers discovered a black box containing a large amount of cocaine. Although there was heavy rain the previous evening, the box was completely dry. In the woods, about seventy-five yards away, officers also discovered a dry mason jar containing an additional amount of cocaine. Defendant presented evidence tending to show that the grid search was prompted by a police interview with Anzaldo on the

---

[1] Cates was convicted of voluntary manslaughter in a separate trial in November 2013. *State v. Cates*, No. COA16-672, slip op. at 4, 2017 WL 1650090, at *1–2 (N.C. Ct. App. May 2, 2017) (unpublished). However, a charge of trafficking in cocaine brought against Cates, based on the same black box at issue in this case, was dismissed at the close of the State's evidence on the grounds of insufficiency of the evidence. *Id.* at *1.

morning of 30 December 2013, during which Anzaldo gave the "precise location[]" of the black box and stated that the box contained "two (2) kilos of cocaine."

On 6 July 2015, defendant was indicted pursuant to N.C.G.S. § 90-95(h)(3)(c) for trafficking in cocaine by possession of 400 grams or more on 29 December 2013. Defendant moved to dismiss the trafficking charge based on insufficient evidence. The trial court denied defendant's motion. At the close of all evidence, defendant renewed his motion to dismiss, which was again denied. After the jury returned a verdict of guilty, the trial court sentenced defendant to 175 to 222 months' imprisonment. Defendant appealed.

At the Court of Appeals, defendant argued that the trial court erred in denying his motion to dismiss the trafficking charge because the State failed to present sufficient evidence that he actually possessed cocaine on 29 December 2013. Specifically, he contended that the fact that the black box was found in the woods a day later with 400 grams or more of cocaine inside of it did not amount to substantial evidence that the box contained cocaine when defendant passed the box to Cates. The Court of Appeals majority agreed. The majority summarized the State's evidence regarding the exact contents of the black box on 29 December 2013 as follows:

> (1) the heated argument between Polo and Scrappy on the evening of 28 December 2013, (2) the kidnapping of defendant's father that same evening, (3) defendant's production of a closed black box in exchange for his father on the morning of 29 December 2013, and (4) the discovery of a black box containing at least 996 grams of cocaine in the woods on the morning of 30 December 2013.

*Royster*, 822 S.E.2d at 492. The majority concluded that while "this sequence of events raises a suspicion as to the commission of the offense charged, we conclude that it is just that: a suspicion." *Id.* Accordingly, the majority held that the trial court erred in denying defendant's motion to dismiss. *Id.*

One member of the panel dissented for two separate reasons. *Id.* at 492–93 (Dillon, J., dissenting). First, the dissenting judge determined that defendant had failed to preserve his insufficiency of the evidence argument "because the ground for his argument on appeal [was] different [than] the ground he argued before the trial court." *Id.* at 493 (citation omitted). According to the dissenting judge, defendant's motion in the trial court was based solely on the element of knowledge—that is, whether "[d]efendant *knew* there was cocaine in the black box when he possessed it." *Id.* at 493 ("Felonious possession of a controlled substance has two essential elements. [1] The substance must be possessed and [2] the substance must be *knowingly* possessed." (quoting *State v. Galaviz-Torres*, 368 N.C. 44, 48, 772 S.E.2d 434, 437 (2015))). Yet, defendant's argument on appeal, the dissenting judge concluded, was "whether there was sufficient evidence that cocaine was, in fact, in the box at the time [d]efendant possessed it." *Id.* Next, the dissenting judge determined that even assuming defendant had preserved his specific argument on appeal, the evidence was sufficient, when taken in the light most favorable to the State, for a reasonable juror

to infer that there was cocaine in the black box at the time it was in defendant's possession. *Id.* at 493–94.

The State filed its appeal of right based on the dissent.

## II. Analysis

## A. Waiver

The State first argues that defendant failed to preserve the issue of whether the State presented sufficient evidence of possession—that is, whether there was actually cocaine in the black box at the time the box was in defendant's possession. We disagree.

"In a criminal case, a defendant may not make insufficiency of the evidence to prove the crime charged the basis of an issue presented on appeal unless a motion to dismiss the action . . . is made at trial." N.C. R. App. P. 10(a)(3); *see also State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (stating that, when ruling on a defendant's motion to dismiss for insufficient evidence, the trial court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense" (first citing *State v. Roseman*, 279 N.C. 573, 580, 184 S.E.2d 289, 294 (1971); and then citing *State v. Mason*, 279 N.C. 435, 439, 183 S.E.2d 661, 663 (1971))). Our rules provide that:

> A defendant may make a motion to dismiss . . . at the conclusion of all the evidence, irrespective of whether defendant made an earlier such motion. If the motion at

> the close of all the evidence is denied, the defendant may
> urge as ground for appeal the denial of the motion made at
> the conclusion of all the evidence.

N.C. R. App. P. 10(a)(3).

Here the State contends that while defendant moved to dismiss at the close of

the State's evidence based on insufficiency of the evidence, and renewed his motion

at the close of all evidence, he failed to preserve the specific argument he made on

appeal by abandoning the sole ground he argued in the trial court—knowledge—and

arguing a different, unpreserved ground on appeal—possession. In response,

defendant argues that as long as a defendant makes an initial statement moving to

dismiss for insufficient evidence, this constitutes a general motion to dismiss that

requires the trial court to consider the sufficiency of the evidence with respect to every

element of the offense charged and thereby preserves all elements as grounds for

appellate review—even if the defendant proceeds to argue that the evidence is

insufficient with respect only to certain elements.

We need not address here whether a defendant preserves appellate review of

elements not specifically argued in the trial court because defendant, in addition to

arguing that there was insufficient evidence that he knew cocaine was in the black

box, also argued that there was insufficient evidence that cocaine was actually in the

box at the time the box was in his possession. At the close of the State's evidence,

defense counsel argued:

> The testimony has been that no one looked in that

box at all and determined, at the time, the contents of that box. The evidence further is that this box was not found until the next day, some 18 or so hours or more, after the original activity.

. . . .

Along with that, by it not being found until 18 or so hours later, the last that we know it is in the possession of some individual by the name of Scrappy. We -- the State has not been able to produce any evidence of what occurred between the time that he took possession of the box and the time it was found the next morning in a totally different location.

. . . . And we suggest to you, that based on the evidence before the Court at this point, that it is not substantial; there's not substantial evidence to show possession, knowing possession, by this Defendant, of any controlled substance in the box at the time of the alleged crime. So we'd ask you to allow our motion as to the cocaine.

. . . .

Now, the evidence from Mr. Anzaldo was that the -- at least on one occasion, that the box was not transferred until Ronald Royster came out of the [mobile home]. Ronald Royster hadn't seen a box, but, again, it could have been money. It could have been rocks; we don't know. We have no idea what was in that box at the time that it was transferred.

In the same vein, defense counsel argued at the close of all evidence:

So we suggest to you that there is not sufficient evidence, not substantial evidence at this point, at the close of all the evidence, that our client had any knowledge of what was in that box; not only knowledge on his part, but, there is no evidence at all as to what was in the box on the 29th; none.

-9-

We conclude that defendant argued in the trial court that the State failed to present substantial evidence of actual possession and that this issue was properly preserved for appellate review.

## B. Sufficiency of the Evidence

Next, the State argues that the Court of Appeals erred in concluding that the State failed to present substantial evidence that defendant possessed 400 grams or more of cocaine on 29 December 2013. As to this issue, the members of this Court are equally divided; accordingly, the holding of the Court of Appeals with respect to this issue is left undisturbed and stands affirmed without precedential value. *See, e.g.*, *Piro v. McKeever*, 369 N.C. 291, 794 S.E.2d 501 (2016) (per curiam); *State v. Long*, 365 N.C. 5, 705 S.E.2d 735 (2011) (per curiam).

## III. Conclusion

In sum, we conclude that defendant preserved for appellate review the issue of insufficiency of the evidence. The holding of the Court of Appeals that the State failed to present substantial evidence that defendant possessed 400 grams or more of cocaine on 29 December 2013 is affirmed without precedential value.

AFFIRMED.

Justice DAVIS did not participate in the consideration or decision of this case.